No. 23-13851-A

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

ROBERT S. MARTIN, INDIVIDUALLY AND AS TRUSTEE OF THE
MARTIN 2008-A INVESTMENT TRUST, THE MARTIN 2013-A
INVESTMENT TRUST, THE RPM 2005 FAMILY TRUST, AND
THE RSM 1988 TRUST,

Plaintiff / Appellee,

v.

ERIC BISCHOFF,

Defendant / Appellant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
Case No. 8:21-CV-01045-MSS-AAS

_____

### BRIEF OF APPELLEE ROBERT S. MARTIN

_____

Martin S. Hyman
Matthew C. Daly
Golenbock Eiseman Assor Bell
& Peskoe LLP
711 Third Avenue
New York, New York 10017
Tel: (212)907-7300
Fax: (212) 754-0330

William J. Schifino, Jr.
Lauren V. Purdy
John A. Schifino
Justin P. Bennett
Gunster, Yoakley & Stewart, P.A.
401 E. Jackson St., Suite 1500
Tampa, Florida 33602
Tel: (813) 228-9080
Fax: (813) 228-6739

*Counsel for Appellee, Robert S. Martin*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to F.R.A.P. 26.1 and 11th Cir. R. 26.1-1, 26.1-2(b), 26.1-2(f), and 26.1-3, Plaintiff-Appellee, Robert S. Martin, individually and as a Trustee of the Martin 2008-A Investment Trust, the Martin 2013-A Investment Trust, the RPM 2005 Family Trust and the RSM 1988 Trust certified that the following persons and entities have an interest in the outcome of this appeal to the best of my knowledge:

1.    Adams, Randall T., Counsel for Defendant-Appellant

2.    Austrich, Jaime, Counsel for Defendant-Appellant

3.    Bell, Kenneth B., Counsel for Plaintiff-Appellee

4.    Bennett, Justin P., Counsel for Plaintiff-Appellee

5.    Bischoff, Eric, Defendant-Appellant

6.    Boar's Head Provisions Co., Inc.

7.    Brunckhorst, III, Frank

8.    Daiker, Duane A., Counsel for Defendant-Appellant

9.    Daly, Matthew C., Counsel for Plaintiff-Appellee

10.   Dietrich, Daniel P., Counsel for Plaintiff-Appellee

11.   Frank Brunckhorst Co., LLC

12.   Garibyan, Mark L. Counsel for Defendant-Appellant

13.   Golenbock Eiseman Assor Bell & Peskoe LLP, Counsel for Plaintiff-Appellee

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

14.    Gunster Yoakley & Stewart, P.A., Counsel for Plaintiff-Appellee

15.    Hyman, Martin S., Counsel for plaintiff-Appellee

16.    Jennings, Taleah E., Counsel for Defendant-Appellant

17.    Koche, David L., Counsel for Plaintiff-Appellee

18.    Martin, Robert P., Beneficiary of the RPM 2005 Family Trust

19.    Martin, Robert S., as Trustee of the Martin 2008-A Investment Trust, the Martin 2013-A Investment Trust, the RPM 2005 Family Trust and the RSM 1988 Trust, Plaintiff-Appellee

20.    Martin 2013-A Investment Trust

21.    Martin 2008-A Investment Trust

22.    Martin, Robert S., his individual capacity, Plaintiff-Appellee

23.    Nealy-Brown, Jounice L., Counsel for Plaintiff-Appellee

24.    Purdy, Lauren, Counsel for Plaintiff-Appellee

25.    Reem, Minji, Counsel for Defendant-Appellant

26.    RSM 1988 Trust

27.    RPM 2005 Family Trust

28.    Sansone, Amanda Arnold, U.S. Magistrate Judge

29.    Saviano, Edward S., Counsel for Defendant-Appellant

30.    Saviano PC, Counsel for Defendant-Appellant

31.    Schaffnit, Brian W, Counsel for Defendant-Appellant

32.    Schifino, John, Counsel for Plaintiff-Appellee

33.    Schifino, William J., Counsel for Plaintiff-Appellee

34.    Schulte Roth & Zabel LLP, Counsel for Defendant-Appellant

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

35.    Scriven, Mary S., U.S. District Judge

36.    Shumaker Loop & Kendrick, LLP, Counsel for Defendant-Appellant

37.    Swartz, Michael E, Counsel for Defendant-Appellant

No publicly traded company or corporation has an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary because affirmance of the district court's order is compelled by well-settled New York law regarding the application of the statute of limitations to the undisputed facts.

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ......................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CITATIONS ........................................................................ iv

STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION.................................................................................. viii

STATEMENT OF THE ISSUES.................................................................1

INTRODUCTION ................................................................................2

STATEMENT OF THE CASE AND FACTS ................................................4

   I.  Statement of the Facts.................................................................4

      A.   Boar's Head Historical Family Ownership .........................................4

      B.   RSM and Bischoff's Receipt of Boar's Head Shares .........................6

      C.   The Operative Shareholder's Agreement.........................................7

      D.   The Share Transfer Restrictions under the Shareholder's
          Agreement .........................................................................8

      E.   The Three Transfers From RSM to His Son, RPM...........................11

      F.   Bischoff's Knowledge of RPM's Boar's Head Ownership and
          Bischoff's Own Attempts to Transfer Group B Shares to His
          Children Who Were Not Actively Employed By Boar's Head .........13

      G.   Bischoff's Untimely Challenge to the Three Transfers ....................15

      H.   Statement of the Case ........................................................15

          i.    RSM's Claim for Declaratory Judgment .................................15

          ii.   Bischoff's Answer, Defenses, Counterclaim and Third-
              Party Complaint .......................................................17

          iii.   RSM's Motion for Summary Judgment...................................17

          iv.   Bischoff's Motion to Supplement His Response to RSM's
              Motion for Summary Judgment................................................19

          v.    The District Court's Order on Appeal .....................................20

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

II. Standard of Review..................................................................23

SUMMARY OF ARGUMENT .........................................................23

ARGUMENT ..................................................................................27

  I.  Bischoff's challenge to the 2011 transfer is barred by New York's six-year statute of limitations ...........................................................27

      A.    New York strictly enforces its six-year statute of limitations for breach of contract and declaratory judgment claims.........................27

      B.    New York law applies its six-year statute of limitations to breach of contract and declaratory judgment claims seeking to void a transfer....................................................................................29

  II. Bischoff's challenge to the 2013 and 2016 transfers fails as a matter of law.....................................................................................35

      A.    The 2011 Transfer made RPM a Group B Shareholder by the terms of the Shareholder's Agreement, and Bischoff may not contest RPM's status eight years after the 2011 Transfer.................36

          i.    RPM became a Group B Shareholder pursuant to the 2011 Transfer ............................................................................36

          ii.   Bischoff cannot challenge RPM's status as a Group B Shareholder eight years after the 2011 Transfer......................39

  III. The district court did not abuse its discretion in rejecting Bischoff's untimely and unsupported equitable estoppel defense.................43

      A.    Bischoff waived his equitable estoppel defense by failing to raise it until after discovery concluded in his response to RSM's motion for summary judgment.........................................................43

      B.    At any rate, the district court's holding that Bischoff has not raised a genuine issue of material fact on the elements of equitable estoppel is not clearly erroneous ........................................46

CONCLUSION..............................................................................50

CERTIFICATE OF COMPLIANCE....................................................52

CERTIFICATE OF SERVICE ..........................................................52

iii

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

## TABLE OF CITATIONS

**Page(s)**

**Federal Cases**

*Busher v. Barry*,
   2021 WL 5071871 (2d Cir. Nov. 2, 2021) ..................................................31, 32

*Corp. Universe, Inc. v. Emry Cap. Grp., Inc*,
   2023 WL 5629230 (S.D.N.Y. Aug. 31, 2023)....................................................30

*Cross Sound Cable Co., LLC v. Long Island Lighting Co.*,
   2022 WL 247996 (E.D.N.Y. Jan. 27, 2022)........................................................31

*Edwards v. Fulton Cnty.*,
   509 F. App'x 882 (11th Cir. 2013) .....................................................................46

*Kleiman v. Wright*,
   2020 WL 5632654 (S.D. Fla. Sep. 18, 2020) .....................................................43

*United States v. Kubrick*,
   444 U.S. 111 (1979)............................................................................................27

*Nat'l Health Fin. DM, LLC v. Sea Spine Orthopedic Inst.*,
   2022 WL 2065045 (S.D. Fla. June 8, 2022)........................................................43

*Proctor v. Fluor Enters., Inc.*,
   494 F.3d 1337 (11th Cir. 2007) .........................................................................44

*Roeder v. J.P. Morgan Chase & Co.*,
   523 F. Supp. 3d 601 (S.D.N.Y. 2021) ................................................................50

*Sweet v. Sec., Dep't of Corr.*,
   467 F.3d 1311 (11th Cir. 2006) .........................................................................46

*Twerskey v. Yeshiva Univ.*,
   993 F. Supp. 2d 429 (S.D.N.Y. 2014) ................................................................47

*Vardanyan v. Close-Up Int'l, Inc.*,
   2007 WL 4276670 (E.D.N.Y. Nov. 30, 2007) ...................................................33

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

*Xerox State & Local Sols., Inc. v. Xchanging Sols. (USA), Inc.*,
  216 F. Supp. 3d 355 (S.D.N.Y. 2016) ...............................................30

**State Cases**

*ACE Secs. Corp. v. DB Structured Prods., Inc.*,
  36 N.E.3d 623 (N.Y. 2015)...............................................................28

*Aloi v. Bd. of Educ.*,
  439 N.Y.S.2d 169 (N.Y. App. Div. 1981)..........................................28

*Assocs., LLC v. Golden Touch Mgmt., Inc.*,
  2012 WL 12878252 (N.Y. Sup. Ct. Nov. 9, 2012)............................33

*Auction House 43, Inc. v. Koblence*,
  126 N.Y.S.3d 849 (N.Y. Sup. Ct. 2020)............................................33

*Bacon v. Nygard*,
  35 N.Y.S.3d 25 (N.Y. App. Div. 2016)..............................................49

*Bank of N.Y. Mellon v. WMC Mortg., LLC*,
  39 N.Y.S.3d 892 (N.Y. Sup. Ct. 2016)................................40, 47, 48

*Berkovits v. Berkovits*,
  69 N.Y.S.3d 506 (N.Y. App. Div. 2018)............................................31

*Boyd v. Bowen*,
  806 A.2d 314 (Md. Ct. Spec. App. 2002).........................................28

*Contour Const., LLC v. Kohlbach*,
  880 N.Y.S.2d 871 (N.Y. Sup. Ct. 2009)............................................28

*Dean v. VanScoter*,
  470 N.Y.S.2d 224 (N.Y. App. Div. 1983)..........................................30

*Ely-Cruikshank Co. v. Bank of Montreal*,
  615 N.E.2d 985 (N.Y. 1993)..............................................................28

*Faison v. Lewis*,
  25 N.Y.3d 220 (N.Y. 2015) ...............................................................32

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

*Genger v. Genger*,
    2015 WL 112831 (N.Y. Sup. Ct. Jan. 7, 2015) ..................................................33

*Hulbert v. Clark*,
    28 N.E. 638 (N.Y. 1891)...................................................................40

*Javaheri v. Old Cedar Dev. Corp.*,
    2006 WL 6868089 (N.Y. Sup. Ct. Oct. 25, 2006)...............................31

*John J. Kassner & Co. v. City of N.Y.*,
    389 N.E.2d 99 (N.Y. 1979)................................................................30

*Johnson v. Albany & Susquehanna R.R. Co.*,
    54 N.Y. 416 (N.Y. 1873) .................................................39, 40, 41, 42

*Kassab v. Kassab*,
    29 N.Y.S.3d 39 (N.Y. App. Div. 2016) ............................................31

*Kaufman v. Cohen*,
    760 N.Y.S.2d 157 (N.Y. App. Div. 2003) .........................................47

*Kavanaugh v. Kavanaugh*,
    161 N.Y.S.3d 558 (N.Y. App. Div. 2021)....................................36, 37

*Landau v. LaRossa, Mitchell & Ross*,
    892 N.E.2d 380 (N.Y. 2008)..............................................................28

*Langston v. MFM Contracting Corp.*,
    102 N.Y.S.3d 12 (N.Y. App. Div. 2019).............................................49

*Marshall v. Duryea*,
    569 N.Y.S.2d 112 (N.Y. App. Div. 1991)............................30, 48, 49

*Pacchiana v. Pacchiana*,
    462 N.Y.S.2d 256 (N.Y. App. Div. 1983) .........................................32

*Putter v. N. Shore Univ. Hosp.*,
    7 N.Y.3d 548 (N.Y. 2006) .................................................................47

*Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Comm. Renewal*,
    35 N.Y.3d 332 (N.Y. 2020) ...............................................................28

*Robert S. Martin v Eric Bischoff*
Appeal No. 23-13851-A

*Riverside Syndicate, Inc. v. Munroe*,
    10 N.Y.3d 18 (N.Y. 2008) ................................................................32

*Ross v. Louise Wise Servs., Inc.*,
    868 N.E.2d 189 (N.Y. 2007) ...........................................................47

*Rural Cmty. Coalition, Inc. v. Vill. of Bloomingburg*,
    6 N.Y.S.3d 758 (N.Y. App. Div. 2015) ...........................................42

*Rural Cmty. Coalition, Inc. v. Vill. of Bloomington*,
    987 N.Y.S.2d 654 (N.Y. App. Div. 2014) ........................................41

*Smith v. Russell Sage Coll.*,
    429 N.E.2d 746 (N.Y. 1981) ...........................................................28

*Solnick v. Whalen*,
    401 N.E.2d 190 (N.Y. 1980) ...........................................................29

*Wagner v. Pegasus Cap. Advisors, L.P.*,
    2020 WL 6114704 (N.Y. Sup. Ct. Oct. 16, 2020) ............................40

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (N.Y. 2006) ...............................................................46

**Other Authorities**

11th Cir. R. 26.1-1 ..........................................................................C-1

75 N.Y. Jur. 2d *Limitations and Laches* § 23 (2023) .............................41

C.P.L.R. § 201 ..................................................................................30

C.P.L.R. § 213(1) .............................................................................29

C.P.L.R. § 213(2) ...................................................................21, 28, 30, 42

Federal Rule Civil Procedure 8(c) ......................................................44

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Appellee agrees with Appellant's jurisdictional statement.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly determined that Appellant's challenge to the 2011 Transfer was barred by New York's six-year statute of limitations.

2.    Whether the district court correctly determined that the 2013 Transfer and 2016 Transfer were permitted by the terms of the operative Shareholder's Agreement.

3.    Whether the district court abused its discretion in holding that Appellant waived his equitable estoppel defense by raising it for the first time in response to Appellee's motion for summary judgment and whether the district court's alternative holding that Appellant failed to raise a genuine issue of material fact as to all elements of his equitable estoppel defense was clearly erroneous.

## INTRODUCTION

The issue in this appeal involves the straightforward application of New York's six-year statute of limitations to a challenge to the transfer of shares in a century-old family business from a father to his son, both direct descendants of one of the company's original founders.

In 2011, Appellee Robert S. Martin ("RSM"), transferred shares representing a 0.05% interest in the family's business, Boar's Head Provisions Co., Inc. ("Boar's Head"), to his son, Robert P. Martin ("RPM") ("2011 Transfer"). At the time, RPM was rising through the ranks at Boar's Head (then a Vice President) and is now its Chief Executive Officer. The 2011 Transfer was acknowledged by the company's Board of Directors as consistent with the family's operative Shareholder's Agreement that provides the procedure for transfers of Boar's Head shares to and among family members. After RPM became a "Group B Shareholder" by virtue of the 2011 Transfer, RSM made two subsequent transfers of Boar's Head shares to RPM in 2013 and 2016 ("2013 Transfer" and "2016 Transfer"). None of the transfers was secret. RPM has signed documents as a Group B Shareholder, was announced as an owner at a national sales meeting with distributors, and his ownership in Boar's Head has been reflected in ownership structure documents for years.

RSM's cousin, Appellant Eric Bischoff ("Bischoff"), is also a Group B Shareholder. There is abundant evidence that Bischoff was aware, as early as 2011,

that RPM had become a Group B Shareholder. Regardless, Bischoff concedes he knew that RPM had become a Group B Shareholder by at least 2015, more than two years before the expiration of the applicable statute of limitations and more than four years before his October 2019 arbitration claim disputing, for the very first time, the propriety of any of the transfers.

Bischoff acknowledges that New York's statute of limitations would normally bar a claim brought after 2017 contesting the 2011 Transfer. But he asserts that where a party challenges a transfer as "void," the statute of limitations somehow does not apply. Thus, he contends he is not barred from arguing that RPM never became a Group B Shareholder in 2011. Nor, in Bischoff's view, is he barred from asserting that the 2013 and 2016 Transfers predicated on RPM being a Group B Shareholder should be rescinded.

Bischoff's arguments are contrary to New York law and public policy. In effect, Bischoff argues that he could sit on the sidelines for nearly a decade, as family shares in Boar's Head were passed to the next generation, and nevertheless seek to unwind a long-acknowledged transaction impacting the leaders of the family business solely by characterizing the transaction as "void." This contention is antithetical to the purpose of statutes of limitation, which reflect the legislature's judgment regarding the need for finality with respect to potential controversies.

3

The district court correctly rejected Bischoff's argument by finding that his claim regarding the 2011 Transfer was barred by the statute of limitations, and that the subsequent 2013 and 2016 Transfers must stand as well. This Court should affirm.

**STATEMENT OF THE CASE AND FACTS**

## I.    STATEMENT OF THE FACTS

### A.    Boar's Head Historical Family Ownership

Boar's Head is a family-owned business that was founded in 1933 by brothers-in-law Frank C. Brunckhorst and Bruno Bischoff. [D.E. 55, p. 3]. Theodore Weiler, a non-family member, was the company's third co-founder. [D.E. 55, p. 6].

In 1961, the Brunckhorst and Bischoff/Martin families signed the F.B. Associates Limited Partnership Agreement ("F.B. Partnership Agreement"), which created the F.B. Associates Limited Partnership. [DE 47, p. 6 n.7; DE 55, p. 3]. The F.B. Partnership Agreement memorialized Boar's Head as a family-owned and operated business through which eight original family partners, Frank C. Brunckhorst, Bruno Bischoff, Lillian Edith Brunckhorst, Bertha Bischoff, Herbert Bischoff, Alvina Martin, Barbara Brunckhorst (Stravitz), and Frank T. Brunckhorst, owned 75% of the company. [D.E. 49-3, p. 5; D.E. 55, p. 5]. Mr. Weiler owned the remaining 25% interest until he sold his shares back to Boar's Head in 1984. [D.E. 55, p. 3-4].



Under the F.B. Partnership Agreement, as amended, the family members' Boar's Head interests could only be transferred on a *pro rata* basis to the other family members who were already F.B. Associates partners as reflected in the chart above. [D.E. 49-5, p.7-8]. By 1985, although the company had continued to grow over the ensuing 25 years, only three surviving owners of Boar's Head remained: Lillian Edith Brunckhorst (25%), Barbara Brunckhorst (50%), and Alvina Martin (RSM's mother) (25%), none of whom was employed by the company. [D.E. 55, p. 4].

On October 29, 1985, the three aging owners of Boar's Head entered into a Shareholder's Agreement and Irrevocable Proxy ("1985 Shareholder's Agreement") [D.E. 49-9]. The 1985 Shareholder's Agreement permitted generational transfers of Boar's Head shares to bloodline family members who were active employees in the business, which ensured that Boar's Head would remain family-owned and operated for years to come. [D.E. 49-9, p. 5].

5

The 1985 Shareholder's Agreement separated the three then-owners into "Group A Shareholders" and "Group B Shareholders." [D.E. 49-9, p. 2]. The sole Group A Shareholder was Barbara Brunckhorst (who owned 50% of Boar's Head), and the Group B Shareholders were Alvina Martin (who owned 25%) and the L. Edith Brunckhorst 1985 Trust (which owned the remaining 25%). [D.E. 55, p. 4].

### B.    RSM and Bischoff's Receipt of Boar's Head Shares

In 1988, the Boar's Head leadership decided that Boar's Head owner Lillian Edith Brunckhorst's 25% ownership interest in Boar's Head should be passed to RSM – who had assumed a leadership role within the company – and that Bischoff should not receive any of her shares.[1] [D.E. 57-3, p. 4].

Given that Bischoff was his cousin, RSM urged the company's leaders to give Bischoff some of the Boar's Head shares that they had earmarked entirely for RSM. [D.E. 57-2, p 4; D.E. 57-1, pp. 5-6]. As a result, in 1988, both RSM and Bischoff, first cousins, became Boar's Head shareholders. [D.E. 55, p. 4]. They were, at that time, also active employees of the company. [D.E. 55, p.4].

---

[1] The L. Edith Brunckhorst 1985 Trust provided the trustees with the authority to determine the disposition of the trust's assets at its termination, which included the L. Edith Brunckhorst 1985 Trust's 25% ownership interest in Boar's Head. [D.E. 57-3, p. 4].

## C.     The Operative Shareholder's Agreement

In 1991, the then-owners of Boar's Head – Barbara Brunckhorst, the Alvina Martin 1988 Trust, RSM, and Bischoff – entered into the 1991 Boar's Head Shareholder's Agreement and Irrevocable Trust ("Shareholder's Agreement"), which remains operative to this day. [D.E. 55, p. 4; D.E. 47-2]. The Shareholder's Agreement also provided for only two groups of Shareholders: Group A and Group B. [D.E. 47-2, p. 3].

At the time of the Shareholder's Agreement, Boar's Head co-founder Frank C. Brunckhorst's family line (referred to as "Group A Shareholders") had one shareholder, his daughter Barbara Brunckhorst. [D.E. 47-2]. Co-founder Bruno Bischoff's family line (referred to as "Group B Shareholders") had three shareholders: Alvina Martin (via her trust); RSM; and Bischoff. [*Id*.]. Only the Group B Shareholders are at issue in this case. The Group B Shareholder family line is as follows:



[D.E. 47-2].

### D.    The Share Transfer Restrictions under the Shareholder's Agreement

The parties agree that the Shareholder's Agreement is governed by New York law, [D.E. 47-2, para. 18], and it addresses the disposition and transfer of Boar's Head shares. Specifically, Paragraph 3(b) of the Shareholder's Agreement establishes permitted transferees of Group B shares, providing that Group B shares may be transferred to:

a. **any other Group B Shareholder**;

b. **any other member of Alvina Martin's immediate family** (including nieces and nephews but excluding Robert A. Martin) who is an **Active Employee** [of Boar's Head];[2]

---

[2] Robert A. Martin was RSM's father who married into the family and thus was not part of the founders' bloodline.

> c. a **trust for the benefit of such Group B Shareholder or such permitted transferee**; or
>
> d. a **beneficiary of the Alvina Martin 1988 Trust** to whom Shares are permitted to be transferred under the terms of the Trust Agreement creating such Trust as in effect on the date hereof[.]

[D.E. 47-2, p. 6 (emphases added)].

Paragraph 3(b) further provides that the recipient of shares obtains the same status (*i.e.* Group A or Group B) as the transferor of the shares:

> the transferee shall take such Shares subject to, and shall be fully bound by, the terms of this Agreement as if such transferee were a party hereto as a Group A or Group B Shareholder, as the case may be (based upon the Group of which the transferring Shareholder was a member).

[*Id.*]. Thus, the Shareholder's Agreement contemplates that every shareholder must fall within one of two classes: either Group A or Group B. Indeed, the preamble to the Shareholder's Agreement defines "Shareholder" as "the Group A Shareholders and the Group B Shareholders." [D.E. 47-2, at p.1]. It has no provision for any other type of shareholder.

Pursuant to Paragraph 3(a) of the Shareholder's Agreement, any attempted disposition of shares in violation of the Shareholder's Agreement "shall be void and shall immediately give [Boar's Head] and the Shareholders the option to purchase the shares which were the subject of the attempted disposition . . . on the terms set

forth in Paragraph 4 hereof, except that no written offers as provided therein need be given." [*Id*. ¶ 3(a)].[3]

If any disposition of shares is made in violation of the Shareholder's Agreement, Paragraph 4 establishes a waterfall purchase option procedure as follows:

a. the shares are first deemed offered to the other members of the transferring shareholder's group (i.e., Group A to Group A or Group B to Group B). Each such shareholder in the offering shareholder's group has 20 days to exercise an option to purchase. [*Id*. ¶ 4(a)-(b)].

b. If no shareholders in the group exercise his or her purchase option, then the shares are deemed offered to Boar's Head, which has 20 days to exercise its option to purchase. [*Id.* ¶ 4(c)].

c. If Boar's Head elects not to exercise its option, the shares are deemed offered to the shareholders in the other group (i.e., Group A to Group B or Group B to Group A) for a period of 10 days. [*Id.* ¶ 4(d)].

d. If there is no election to purchase all of the shares by a shareholder or Boar's Head pursuant to the waterfall provisions of Paragraph 4, the offering shareholder has a right to transfer the shares in a bona fide transaction. The recipient of such shares takes them "as a member of the Group of the transferring Shareholder." [*Id.* ¶ 4(i)].

---

[3] Paragraph 3 of the Shareholder's Agreement does not require a shareholder to provide notice to any other shareholder of a contemplated or actual share transfer. [D.E. 47-2, p. 6].

**E.    The Three Transfers from RSM to His Son, RPM**

This appeal involves three separate transfers of Group B shares of Boar's Head from RSM to his son, RPM, in 2011, 2013, and 2016.

RPM is RSM's son, Alvina Martin's grandson and Boar's Head co-founder Bruno Bischoff's great-grandson. [D.E. 55, p. 5]. He began working at Boar's Head in 2005, was rising through the ranks of Boar's Head at the time of the share transfers at issue (as Vice President in 2011 and 2013, and COO in 2016), and currently serves as the company's CEO. [D.E. 47, p. 7-8]. RPM has emerged as a face of the Boar's Head brand in dealings with distributors, supermarket executives, and suppliers, and has spearheaded the company's marketing and new product development efforts. [D.E. 47, p. 7-8]. There is no dispute that RPM was an "Active Employee" as required by Paragraph 3 of the Shareholder's Agreement at the time of the three transfers. [I.B. at 11].

The first transfer occurred on September 14, 2011, when RSM, through the RSM Trust,[4] transferred Group B shares representing a 0.05% interest in Boar's Head to RPM, through the RPM Trust (the "2011 Transfer").[5] [D.E. 47-6].

---

[4] RSM made the transfers through two of his trusts: the Martin 2008-A Investment Trust and the Martin 2013-A Investment Trust. For ease of reference, they are collectively referred to as the "RSM Trust."

[5] The RPM 2005 Family Trust ("RPM Trust") was created in March 2005 for RPM's benefit. [D.E. 55, p. 5]. The distinction between RPM and the RPM Trust is immaterial for purposes of this appeal. Paragraph 3(b) of the Shareholder's

Contemporaneous with the 2011 Transfer, Boar's Head's Board of Directors signed acknowledgements stating that the 2011 Transfer complied with the terms of the Shareholder's Agreement. [D.E. 47-6, pp. 9-13]. RPM's ownership status was announced to distributors at a national sales meeting. [D.E. 47, p. 8-9].

By virtue of the 2011 Transfer of Group B shares to the RPM Trust, RPM became a Group B Shareholder in accordance with Paragraph 3(b) of the Shareholder's Agreement. [D.E. 47-2, p. 6].

In recognition of RPM's continued success as a leader of Boar's Head, RSM made two more transfers of Group B shares to RPM. [D.E. 47, p. 10]. On December 31, 2013, the RSM Trust transferred Group B shares representing a 10% interest in Boar's Head to the RPM Trust ("2013 Transfer"). [D.E. 47-7]. On April 7, 2016, the RSM Trust transferred Group B shares representing another 5% interest in Boar's Head to the RPM Trust ("2016 Transfer").  [D.E. 47-8].

The 2013 Transfer and the 2016 Transfer were "Group B to Group B" transfers because the RSM Trust, a Group B Shareholder, made transfers to another Group B Shareholder, the RPM Trust. [*See* Paragraph 3(b) of the Shareholder's Agreement, D.E. 47-2, p. 6]. The three transfers resulted in RPM, through the RPM

---

Agreement authorizes transfers to a permissible transferee (*i.e.* RPM) or a "trust for the benefit" of such transferee (*i.e.* the RPM Trust).

Trust, owning a 15.05% interest in Boar's Head as a Group B Shareholder. [D.E. 47-2; D.E. 55, p. 5].

### F.    Bischoff's Knowledge of RPM's Boar's Head Ownership and Bischoff's Own Attempts to Transfer Group B Shares to His Children Who Were Not Actively Employed by Boar's Head

Bischoff admits that he knew, by at least July 2015, that RPM had become an owner of Boar's Head. [D.E. 47-11; D.E. 47-1, p. 7].[6]

And it is also undisputed that, in 2012, shortly after RPM became an owner of Boar's Head, Bischoff attempted to transfer a portion of his Boar's Head Group B shares to his two daughters, who are in the same family generation as RPM (all three being co-founder Bruno Bischoff's great-grandchildren). [D.E. 47-1, p. 14]. Unlike RPM, however, Bischoff's teenage daughters were not "Active Employee[s]" of Boar's Head as required under Paragraph 3 of the Shareholder's Agreement. [47-1, p.5; D.E. 47-3, p. 11; D.E. 47-5, p. 6]. Consequently, Bischoff's transfer was impermissible under Paragraph 3 of the Shareholder's Agreement. [D.E. 47-5, p. 13; D.E. 47-3, p. 11; D.E. 47-1, p. 5].

---

[6] The record shows that Bischoff was aware of RPM's ownership long before 2015. Frank Brunckhorst III (Boar's Head Group A Shareholder), Steven Kourelakos (Boar's Head Chief Financial Officer), and Craig Fair (former Boar's Head Senior Director of Finance) each testified that they told Bischoff in late 2011 or early 2012 that RPM had become an owner of Boar's Head. [D.E. 47-5, p. 9, 11; D.E. 47-12, p. 4-5, 7-9; D.E. 47-9, p. 4; D.E. 47-20]. Bischoff asserts these three witnesses are each either mistaken or lying. [D.E. 47, p. 10 n.9].

Rather than exercising their rights to acquire Bischoff's shares pursuant to the waterfall procedure in Paragraph 4 of the Shareholder's Agreement, the Boar's Head owners, including RSM and RPM, allowed Bischoff to rescind the transfer. [D.E. 47-5, p. 13; D.E. 47-3, p. 11; D.E. 47-1, p. 5]. To effectuate the rescission, Bischoff and the other four Boar's Head shareholders – ***including the RPM Trust*** – signed a 2013 Rescission Agreement unwinding the attempted transfer.  [D.E. 47-22]. There is no evidence that Bischoff raised any objection or concern at that time – or for years thereafter – about RPM's (or his trust's) ownership in Boar's Head.[7]

After Bischoff admittedly also became aware that RPM was a Boar's Head owner in 2015, [D.E. 47-11; D.E. 47-1, p. 7], it is further undisputed that in February 2017, Boar's Head provided Bischoff with a letter listing the then-current ownership percentages of all Boar's Head shareholders, including the RPM Trust and also "[f]or comparative purposes, . . . showing the prior two years" (*i.e.* as of January 1,

---

[7] Bischoff claims he can neither admit nor deny that the RPM Trust is a signatory to the 2013 Rescission Agreement because the signature pages were signed separately by each party, and neither RPM nor the RPM Trust participated in the negotiation of the 2013 Rescission Agreement. [D.E. 47-14, p.14]. Even if Bischoff's assertion was credited, Bischoff's claimed failure even to review a complete copy of an agreement he signed in 2013 with all of the other Boar's Head owners reflects a lack of diligence on his part in ascertaining who his co-owners were. Indeed, it is undisputed that Bischoff was represented by counsel in connection with the preparation and execution of the 2013 Rescission Agreement. [D.E. 47-18, at pp. 80-81]. And on June 10, 2013, Bischoff's counsel sent the signature page signed by the RPM Trust to Bischoff's bankers; Bischoff was copied on that email. [D.E. 47-17].

2014, and April 1, 2015). [D.E. 47-13]. Thus, the letter confirmed the RPM Trust's full ownership following the three transfers at issue.

### G.    Bischoff's Untimely Challenge to the Three Transfers

In October 2019, Bischoff served RSM with a Notice of Arbitration, alleging for the first time that the three transfers to RPM occurring in 2011, 2013, and 2016 were impermissible under the Shareholder's Agreement. [D.E. 1, p. 2; D.E. 55, p. 5]. Bischoff admits that prior to October 2019, he never informed any Boar's Head officer, director, or shareholder that he believed that the transfer of Boar's Head shares to RPM or a trust for RPM's benefit violated the Shareholder's Agreement. [D.E. 47-14, p. 11].

In this action, Bischoff has taken the revisionist position (contrary to his attempt to transfer shares to his teenage daughters in 2012) that the Shareholder's Agreement prohibits *any* transfer of shares to *any* of the Boar's Head shareholders' children regardless of whether that child is an "Active Employee" of the company. [D.E. 9, ¶¶31, 48; D.E. 47-1, p. 19]. In other words, Bischoff's position is that the Shareholder's Agreement decrees that Boar's Head's century-old tradition of family ownership and operation must end with his and RSM's generation, such that the last of them to survive will acquire all of the Boar's Head shares. [D.E. 47-1, p. 21].

### H.    Statement of the Case

#### i.    RSM's Claim for Declaratory Judgment

On October 26, 2019, RSM filed a complaint in the district court seeking a

declaratory judgment that the three transfers were permitted under the Shareholder's Agreement. *See Robert S. Martin v. Eric Bischoff*, No. 8:19-cv-02671 (Oct. 26, 2019). During an agreed standstill period intended to afford the parties time to reach an out-of-court resolution, RSM dismissed his complaint and Bischoff withdrew his notice of arbitration, each without prejudice. [D.E. 1, p. 2].

On May 1, 2021, following the expiration of the standstill period, RSM filed a complaint for declaratory relief, seeking a declaratory judgment that:

> (i) each of the 2011, 2013, and 2016 Transfers to the RPM Trust was a permissible transfer to an eligible transferee under the Shareholder's Agreement;

> (ii) the six-year statute of limitations as to the 2011 Transfer expired before Bischoff first asserted any claim, rendering the subsequent transfers valid transfers to a then-existing shareholder;

> (iii) Bischoff failed to comply with the time requirements and other requirements in the Shareholder's Agreement to assert any objection to the transfers or to seek to buy-out the shares;

> (iv) Bischoff acquiesced to, waived, released and/or is estopped from objecting to the three transfers; and

> (v) Bischoff has no legal or equitable right or entitlement to purchase any of RSM or RPM's shares or to any distributions paid to RSM or RPM.

[D.E. 1].

### ii. Bischoff's Answer, Defenses, Counterclaim and Third-Party Complaint

On June 1, 2021, Bischoff filed a counterclaim and third-party complaint asserting causes of action against RSM for breach of contract and declaratory relief. [D.E. 9]. Bischoff's counterclaim alleged that RSM breached the transfer restrictions in the Shareholder's Agreement and sought a declaration that: (i) RPM is not a permissible transferee; (ii) the three transfers are thus void *ab initio*; and (iii) Bischoff has the right to acquire all of both RSM and RPM's shares at book value. [D.E. 9]. Bischoff also sought disgorgement on ten years of RSM and RPM's shareholder dividends. [D.E. 9].

### iii. RSM's Motion for Summary Judgment

On June 3, 2022, upon the close of discovery, RSM filed his motion for summary judgment and requested the district court to declare that: (i) New York's applicable statute of limitations bars Bischoff's claim that RPM is not a permissible Boar's Head shareholder; (ii) the Shareholder's Agreement authorized RSM to transfer the shares to RPM; and (iii) Bischoff is legally and equitably precluded from appropriating for himself any Boar's Head shares and distributions belonging to RSM and RPM. [D.E. 47].

RSM's first of several arguments was that Bischoff is time-barred from challenging the 2011 Transfer based on New York's six-year statute of limitations. [D.E. 47]. The 2011 Transfer established RPM as a Group B Shareholder. [D.E. 47].

17

Accordingly, the 2013 Transfer and the 2016 Transfer were permissible because the Shareholder's Agreement permits the free transfer of shares from one Group B Shareholder (*i.e.* RSM) to another Group B Shareholder (*i.e.* RPM). [D.E. 47].

RSM also argued that RPM is a permissible transferee under the "Immediate Family" and "Alvina Martin Trust Beneficiary" provisions of the Shareholder's Agreement. [D.E. 47]. And RSM asserted that Bischoff failed to timely contest the transfers or offer to buy the shares as required by Paragraph 4 of the Shareholder's Agreement. [D.E. 47]. The district court did not reach (or need to reach) these additional arguments, and they are not the subject of the instant appeal.

In response to RSM's motion for summary judgment and relevant to the issues on appeal, Bischoff argued that the RPM Trust did not become a Group B Shareholder as a result of the 2011 Transfer; therefore, the 2013 and 2016 Transfers were not permitted by the "Group B to Group B" provision of the Shareholder's Agreement. [D.E. 56, p. 9]. Bischoff also argued that New York's six-year statute of limitations did not apply to the 2011 Transfer at all because, in Bischoff's view, RPM was not a permitted transferee, and the Shareholder's Agreement states that prohibited transfers are void. [D.E. 56, p. 26]. He further argued that the statute of limitations "has no bearing on [his] requested declaration that the 2011 Purported Transfer and related transfer agreement were void *ab initio*." [D.E. 56, p. 29].

Bischoff also argued for the first time in opposition to RSM's motion that RSM should be equitably estopped from asserting the statute of limitations as a bar to Bischoff's challenge to the 2011 Transfer. [D.E. 56, p. 31-33]. Bischoff did not raise this estoppel argument in his answer and affirmative defenses or in any of his other pleadings, and asserted it for the first time after the close of discovery.

On July 19, 2022, RSM filed his reply in support of summary judgment [D.E. 60], asserting, among other things, that Bischoff failed to timely assert, and thereby waived, his equitable estoppel argument. [D.E. 60]. In the alternative, RSM argued that Bischoff failed to raise a genuine issue of material fact on any of the elements of his newly-proffered equitable estoppel defense given: (i) his admission that he learned in July 2015 that RPM had become a shareholder, but did not assert his claim until October 2019; and (ii) his failure to allege or show any misrepresentation or active concealment by RSM relating to the transfers or RPM's status as a Boar's Head owner, let alone that Bischoff reasonably relied on any unspecified purported affirmative wrongdoing in failing to timely bring his claim. [D.E. 60].

### iv. Bischoff's Motion to Supplement His Response to RSM's Motion for Summary Judgment

On October 14, 2022, three months after summary judgment briefing closed, Bischoff moved to supplement his opposition to RSM's motion specifically with respect to Bischoff's equitable estoppel argument. [D.E. 70]. Bischoff argued, based on "evidence" obtained in a separate case Bischoff filed in New York against Frank

Brunckhorst III, that "newly-discovered evidence strongly undermines RSM's claim that" Bischoff was informed in late 2011 of the 2011 Transfer.[8] [D.E. 70].

On October 17, 2022, RSM responded to Bischoff's request to supplement, arguing that the alleged "newly discovered evidence," which was from 2009 and did not involve RSM, was irrelevant and moot because Bischoff waived his equitable estoppel argument. [D.E. 74]. And, even if the supplemental submission was considered, the "newly discovered evidence" did not raise a genuine issue of material fact on any of the required equitable estoppel elements.[9] [D.E. 74].

### v. The District Court's Order on Appeal

On October 27, 2023, the district court entered the order on appeal. [D.E. 82]. The order: (1) granted in part and denied in part as moot RSM's motion for summary judgment; (2) dismissed Bischoff's counterclaims and third-party complaint with

---

[8] Notwithstanding that Bischoff's supplemental submission was devoted exclusively to the equitable estoppel issue, Bischoff did not argue, as he seeks to do for the first time on appeal, that RSM was not prejudiced by Bischoff raising his equitable estoppel argument for the first time in opposition to summary judgment.

[9] Bischoff argues in his Initial Brief that "discovery in the New York litigation revealed that, in July 2009, Frank [Brunckhorst] and other Company owners were inquiring about whether they could 'dispose of one share … without Eric [Bischoff]'s knowledge." [I.B. at 17]. Bischoff neglects to mention that the documents he relies upon from 2009: have nothing whatsoever to do with RSM or RPM; pertain exclusively to non-parties in a different action in New York; and are unrelated to the three transfers at issue. Regardless, the documents do not change the fact that Bischoff admittedly learned by July 2015 that RPM had become a Boar's Head shareholder.

prejudice; and (3) denied Bischoff's motion to supplement.[10] [D.E. 82].

First, the district court held that New York's six-year statute of limitations for breach of contract claims under C.P.L.R. § 213(2) barred Bischoff's counterclaims for breach of contract and declaratory judgment concerning the 2011 Transfer. [D.E. 82, p. 13-14]. Recognizing that New York law does not apply the "discovery rule" to the statute of limitations, the district court concluded that the statute of limitations began to run in 2011 and expired in 2017, long before Bischoff first asserted a claim in October 2019. [D.E. 82, p. 13-14].

Additionally, the district court declined to entertain Bischoff's arguments to void the "related transfer documents" because Bischoff's counterclaim for declaratory judgment did not reference any of the "related transfers documents," only the Shareholder's Agreement. [D.E. 82, p. 17]. The district court held that the "claim to void the transfer agreement is not properly before this Court." [D.E. 82, p. 18]. As a result, the district court granted summary judgment in favor of RSM, holding that Bischoff is barred by the New York statute of limitations from asserting

---

[10] Bischoff also moved for partial summary judgment on June 10, 2022, seeking a declaration that the three transfers were not made to a permitted transferee under the Shareholder's Agreement and were therefore void *ab initio*. [D.E. 49]. Because the district court dismissed Bischoff's counterclaims and third-party complaint on other grounds, it did not rule on his motion for partial summary judgment, and Bischoff's motion is not within the scope of this appeal. [D.E. 82].

his breach of contract and declaratory judgment claims challenging the 2011 Transfer. [D.E. 82, p. 17-18].

Second, because Bischoff challenged the 2013 and 2016 Transfers within New York's six-year statute of limitations, the district court considered the propriety of those transfers under the Shareholder's Agreement. [D.E. 82, p. 25-26]. It held that because RPM was a Group B Shareholder pursuant to the 2011 Transfer at the time of the 2013 and 2016 Transfers, those transfers were valid under Paragraph 3(b) of the Shareholder's Agreement as transfers between two Group B Shareholders (i.e. RSM and RPM). [D.E. 82, p. 26-27].

Third, the district court held that Bischoff waived his equitable estoppel defense because he failed to timely assert it. [D.E. 82, p. 20-21]. The district court reasoned that in the complaint, RSM pled that "[u]nder New York's six-year statute of limitations, any challenge by Bischoff to that transfer is time-barred after September 14, 2017." [D.E. 1 at ¶ 49; D.E. 82, p. 20]. In his answer, Bischoff "admit[ted] that [he] did not assert any claim or cause of action based on the 2011 Transfer until he served his Notice of Arbitration on October 9, 2019." [D.E. 9 at ¶¶ 49–50]. However, Bischoff did not raise equitable estoppel any time prior to summary judgment and therefore waived the affirmative defense. [D.E. 82, p. 20-21].

The district court also held that even if Bischoff had not waived an equitable estoppel defense, there was no dispute that he was aware of the RPM's ownership by 2015, well before the statute of limitations ran. [D.E. 82, p. 28]. Consequently, Bischoff failed to present a genuine issue of material fact as to all of the elements of equitable estoppel because he did not put forth any evidence (supplemental or otherwise) that any misrepresentations or affirmative wrongdoing by RSM "caused him to delay bringing a timely action." [D.E. 82, p. 28].

The district court's order did not reach the parties' alternative arguments regarding whether the 2011 Transfer from RSM to RPM was permissible under the Shareholder's Agreement as a transfer to "any other member of Alvina Martin's immediate family" who is an "active employee" or to a "beneficiary of the Alvina Martin 1988 Trust." [D.E. 47-2, p. 6]. The district court also did not reach RSM's argument that Bischoff failed to properly contest the transfers or seek to acquire the shares consistent with Paragraph 4 of the Shareholder's Agreement.

Bischoff timely appealed.

## II.    STANDARD OF REVIEW

RSM agrees with Bischoff's Standard of Review statement.

## SUMMARY OF ARGUMENT

The district court's order should be affirmed for three reasons. First, Bischoff's challenge to the 2011 Transfer is barred by New York's six-year statute

of limitations. New York law favors enforcement of the statute of limitations and has long-recognized that the public interests in finality, predictability, and fairness are served by the statute. Bischoff's assertion that the six-year statute of limitations does not apply to his challenge because he seeks a ruling that the 2011 Transfer was void or void *ab initio* violates well-settled New York law for multiple reasons.

Preliminarily, Bischoff's assertion that the language of the Shareholder's Agreement providing that a prohibited transfer "shall be void" permits him to contractually avoid the statute of limitations fails as a matter of law. It is blackletter New York law that outside the post-claim accrual context (a tolling agreement for example), parties may not contract to extend or waive a statute of limitations.

Additionally, New York courts have repeatedly held that a shareholder's challenge to a stock transfer as "void" or *void ab initio* does not somehow enable a litigant to avoid the application of the six-year statute of limitations. This same rule has been extended to other forms of contract-related challenges as well. Bischoff's reliance on distinguishable cases involving contracts that violate New York ordinances or other statutes is misplaced, as those cases illustrate the narrow exception that a statute of limitations does not apply to an illegal contract.

Thus, given that the 2011 Transfer occurred in September 2011, the statute of limitations expired in September 2017, and Bischoff failed to bring his claim until October 2019, his claim is barred by the statute of limitations. As such, Bischoff

cannot now dispute that RPM became a Group B Shareholder of Boar's Head in and as of 2011.

Second, the district court's holding that the 2013 and 2016 Transfers complied with the Shareholder's Agreement because RPM received the transfers as an existing Group B Shareholder is correct and should be affirmed as well. Bischoff argues that regardless of whether he is time-barred from challenging the 2011 Transfer itself, he can never be time-barred from obtaining an adjudication of the validity of the 2011 Transfer and, in turn, a declaratory judgment that the 2011 Transfer purportedly did not make RPM a Group B Shareholder.

The district court properly rejected this argument, which is nothing more than an attempted end-run around Bischoff's failure to timely challenge the 2011 Transfer. At bottom, Bischoff asserts that New York law permits him to stand idly by, through three sets of stock transfers to RPM that all occurred before the statute of limitations ran. And then, with full knowledge that RPM was a Group B Shareholder and while RPM (i) signed documents as a Group B Shareholder, (ii) held himself out as a Group B Shareholder, and (iii) received additional transfers of stock as a Group B Shareholder, still contest RPM's status as a Group B Shareholder eight years after the 2011 Transfer was consummated. New York law forecloses this contention.

Moreover, Bischoff's argument runs afoul of the terms of the Shareholder's Agreement itself, which provide for only two categories of shareholders: Group A and Group B. Nobody contends that RPM is a Group A Shareholder. Therefore, under the plain terms of the Shareholder's Agreement, by virtue of the 2011 Transfer, the validity of which cannot be questioned at this late date, RPM could not be anything other than a Group B Shareholder.

Third, the district court did not abuse its discretion in rejecting Bischoff's belated attempt to assert equitable estoppel to bar RSM from invoking the statute of limitations. Bischoff did not raise equitable estoppel until his response to RSM's motion for summary judgment, after discovery had closed. RSM indisputably was prejudiced by the delay. He received no notice during discovery that Bischoff would assert an equitable estoppel argument and therefore did not have any need or opportunity to take discovery on the various elements of this defense.

Additionally, the district court did not commit clear error by finding in the alternative that Bischoff failed to raise a genuine issue of material fact on the elements of equitable estoppel. Bischoff admits that he was aware that RPM was a shareholder by 2015, and there is no evidence or even a plausible allegation that RSM made any misrepresentation or engaged in any other wrongdoing that prevented Bischoff from timely bringing his challenge to the 2011 Transfer.

Accordingly, this Court should affirm the order of the district court and allow this family dispute over intra-family transfers of stock that were made between 2011 and 2016 to come to its just end.

## ARGUMENT

## I. BISCHOFF'S CHALLENGE TO THE 2011 TRANSFER IS BARRED BY NEW YORK'S SIX-YEAR STATUTE OF LIMITATIONS

Under applicable New York law, Bischoff's contention that the 2011 Transfer is "void" or void *ab initio* is barred by the six-year statute of limitations. As explained below, New York courts strictly enforce statutes of limitation and have repeatedly recognized that a shareholder's claim that a transfer of stock is void cannot evade the legislature's mandate requiring such a challenge to be brought within six years. Because Bischoff asserted his claim two years after the statute of limitations expired, it is time barred.

### A. New York strictly enforces its six-year statute of limitations for breach of contract and declaratory judgment claims

"Statutes of limitations . . . represent a pervasive legislative judgment that it is unjust to fail to put the adversary on notice to defend within a specified period of time and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (internal quotation marks and citations omitted).

New York law applies to claims brought under the Shareholder's Agreement, and New York courts strictly enforce the statute of limitations in actions for damages

27

and declaratory relief. The New York "[l]egislature has historically acted with deliberation and clarity when upsetting the strong public policy favoring finality, predictability, fairness and repose served by statutes of limitation." *Regina Metro. Co., LLC v. N.Y. State Div. of Hous. & Comm. Renewal*, 35 N.Y.3d 332, 372 (N.Y. 2020).[11]

A claim for breach of contract accrues from the date a contract is breached – not the date a party claims to have first learned of the breach. *See ACE Secs. Corp. v. DB Structured Prods., Inc.*, 36 N.E.3d 623, 628 (N.Y. 2015) ("New York does not apply the discovery rule to statutes of limitations in contract actions."). Whereas some jurisdictions recognize a so-called "discovery rule" that tolls the statute of limitations for breach of contract claims, *see, e.g.*, *Boyd v. Bowen*, 806 A.2d 314, 333 (Md. Ct. Spec. App. 2002), New York does not, *see Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 987 (N.Y. 1993).

Under New York law, claims for breach of contract and declaratory relief based in substance on a contract are subject to New York's six-year statute of limitations under C.P.L.R. § 213(2). *See Contour Const., LLC v. Kohlbach*, 880 N.Y.S.2d 871 (N.Y. Sup. Ct. 2009); *Aloi v. Bd. of Educ.*, 439 N.Y.S.2d 169 (N.Y.

---

[11] Consistent with New York's strong policy favoring the finality afforded by the statute of limitations, New York law holds that a dismissal on statute of limitations grounds is an adjudication on the merits for purposes of res judicata. *See Smith v. Russell Sage Coll.*, 429 N.E.2d 746, 750 (N.Y. 1981); *Landau v. LaRossa, Mitchell & Ross*, 892 N.E.2d 380, 383 n.3 (N.Y. 2008).

App. Div. 1981). Moreover, even for declaratory judgment claims unrelated to breach of contract, the maximum statute of limitations under New York law is six years under C.P.L.R. § 213(1). *See Solnick v. Whalen*, 401 N.E.2d 190, 194 (N.Y. 1980). Thus, under any formulation of Bischoff's claims, the statute of limitations is six years.

### B.    New York law applies its six-year statute of limitations to breach of contract and declaratory judgment claims seeking to void a transfer

To sidestep these well-settled principles of New York law, Bischoff claims that no statute of limitations can ever apply to his challenge to the 2011 Transfer because he seeks a determination that the transfer was "void." [I.B. at 44]. Bischoff relies on Paragraph 3(a) of the Shareholder's Agreement, which provides that a transfer "prohibited by this Agreement shall be void." [I.B. at 29, 44]. In effect, Bischoff's position is that New York law and the terms of the Shareholder's Agreement permit him to sit on his hands indefinitely, wait for familial transfers of Boar's Head shares to pass to the next generation, and then bring suit challenging the transfer as "void" whenever he pleases. That is not New York law.

First, the premise of Bischoff's argument is that the parties to the Shareholder's Agreement have effectively agreed by contract that the statute of limitations does not apply by providing that a prohibited transfer "shall be void." But other than in the post-claim accrual context (like a tolling agreement), New York does not permit parties to agree, in advance, to extend or waive a statute of

29

limitations by contract. *See John J. Kassner & Co. v. City of N.Y.*, 389 N.E.2d 99, 103 (N.Y. 1979); *Xerox State & Local Sols., Inc. v. Xchanging Sols. (USA), Inc.*, 216 F. Supp. 3d 355, 361-62 (S.D.N.Y. 2016). The reason is that parties cannot, "in advance, make a valid promise that a statute founded in public policy shall be inoperative." *John J. Kassner*, 389 N.E.2d at 103.[12]

Second, courts applying New York law have repeatedly applied the statute of limitations to bar claims seeking to void stock transfers brought outside the six-year period required by C.P.L.R. § 213(2). For example, in *Corporate Universe, Inc. v. Emry Capital Group, Inc.*, the Southern District of New York recognized in a declaratory relief action that the six-year statute of limitations applied to a claim that a transfer of shares was void because it was given without consideration. 2023 WL 5629230, at *3 (S.D.N.Y. Aug. 31, 2023).  Similarly, in *Marshall v. Duryea*, the court held that a claim seeking a declaration that a stock transfer allegedly made in contravention of the original shareholder's agreement was "void" was time barred because it was brought outside the statute of limitations. 569 N.Y.S.2d 112, 113 (N.Y. App. Div. 1991). And in *Dean v. VanScoter*, the court applied the statute of limitations to bar a claim seeking a declaration that the issuance of stock to the defendant was "null and void" because it was not brought within six years of when

---

[12] By contrast, the New York Legislature does permit contracting parties to *shorten* the time for asserting a claim under the applicable statute of limitations. *See* C.P.L.R. § 201.

the stock was issued. 470 N.Y.S.2d 224, 224 (N.Y. App. Div. 1983). *See also Javaheri v. Old Cedar Dev. Corp.*, 2006 WL 6868089 (N.Y. Sup. Ct. Oct. 25, 2006) (dismissing on statute of limitations grounds claims asserting stock transfer was void for violating a shareholder's agreement).

New York courts also apply the statute of limitations to other contract-related disputes where a party claims that a transaction was void. *See, e.g.*, *Kassab v. Kassab*, 29 N.Y.S.3d 39, 41-42 (N.Y. App. Div. 2016) (claim seeking declaration that option agreement was void was barred by six-year statute of limitations); *Cross Sound Cable Co., LLC v. Long Island Lighting Co.*, 2022 WL 247996, at *10 (E.D.N.Y. Jan. 27, 2022) (same regarding claim seeking declaration that contract was void for lack of proper approval); *Busher v. Barry*, 2021 WL 5071871, at *4 (2d Cir. Nov. 2, 2021) (holding six-year statute of limitations applies because rule "extends to actions seeking a declaration that a corporate transaction is void"); *Berkovits v. Berkovits*, 69 N.Y.S.3d 506, 506 (N.Y. App. Div. 2018) ("The plaintiff's contention that the statute of limitations does not apply to an action challenging the validity of a separation agreement as void ab initio is without merit."). Here, Bischoff's sole basis for claiming, or seeking a declaration, that the transfers (or the related transfer agreement) were void *ab initio* is that they allegedly violated the Shareholder's Agreement. Pursuant to the foregoing authorities, the statute of limitations applies to such a claim.

31

By contrast, the cases relied upon by Bischoff do not support his argument, as they each involved claims that a transaction was void due to some statutory or public policy violation independent of a contract. Thus, his reliance on *Faison v. Lewis*, 25 N.Y.3d 220 (N.Y. 2015), and *Riverside Syndicate, Inc. v. Munroe*, 10 N.Y.3d 18, 21 (N.Y. 2008), is misplaced. Those decisions represent a narrow exception to the statute of limitations for a transaction that is illegal, criminal, or against public policy (not merely allegedly contrary to a contract). In *Faison*, the court did not apply a statute of limitations to a forged deed, citing the "public policy concerns that underlie prohibitions on enforcement of illegal contracts." 25 N.Y.3d at 228–29. Indeed, in support of its analysis, the court cited a New York penal code provision criminalizing forgery and subjecting wrongdoers to potential incarceration for violation of the law.[13] *Id.* at 229. Similarly, in *Riverside Syndicate*, the court refused to enforce an illegal rent agreement that violated New York's Rent Stabilization Code. 10 N.Y.S.3d at 22-24. Citing public policy concerns, the court noted that the agreement was entered into in contravention of New York law, and it could not become an enforceable agreement based on the passage of the statute of limitations.[14] *Id.* at 266. In contrast, here Bischoff does not claim that the transfers

---

[13] In *Busher*, the Second Circuit distinguished *Faison* as a narrow exception to the statute of limitations because *Faison* concerned "a claim against a forged deed." 2021 WL 5071871, at *4 n.1.

[14] The other cases Bischoff cites are similarly inapposite because they involved claims that a transaction was void for reasons independent of an alleged breach of a

violated any statute or public policy. His claims (for both breach of contract and declaratory judgment) are premised solely on his argument that the transfers violated the Shareholder's Agreement. The six-year statute of limitations applies, and he is barred from disputing that the 2011 Transfer was valid and fully operative.

Finally, Bischoff cites *Genger v. Genger*, 2015 WL 112831, at *11 (N.Y. Sup. Ct. Jan. 7, 2015), for the proposition that under New York law "shall be void" means that any attempt to transfer shares – at any time – is "a legal nullity" that avoids the application of the statute of limitations. [I.B. at 29]. In *Genger*, the plaintiff-shareholder brought suit in 2008 asserting that a 2004 stock transfer was made "in violation" of the shareholder's agreement, and the court found the transfer was void. *Id.* at *2. Bischoff neglects to mention that the plaintiff in *Genger* filed suit ***within the six-year statute of limitations***, and thus, the case is irrelevant and does not support Bischoff's argument that there is no time limitation on his ability to challenge the transfers at issue simply by characterizing them as "void."[15] As set

---

contract. *See Pacchiana v. Pacchiana*, 462 N.Y.S.2d 256 (N.Y. App. Div. 1983) (antenuptial agreement allegedly void because it violated statute requiring acknowledgment of signatures); *Auction House 43, Inc. v. Koblence*, 126 N.Y.S.3d 849 (N.Y. Sup. Ct. 2020) (defendant allegedly misrepresented that he owned a sapphire that was used as collateral for a loan); *Assocs., LLC v. Golden Touch Mgmt., Inc.*, 2012 WL 12878252 (N.Y. Sup. Ct. Nov. 9, 2012) (agreement was allegedly unconscionable).

[15] Bischoff's repeated citation to *Vardanyan v. Close-Up Int'l, Inc.*, 2007 WL 4276670 (E.D.N.Y. Nov. 30, 2007), *aff'd*, 315 F. App'x 315 (2d Cir. 2009), is similarly misleading, as that case did not involve a statute of limitations issue either.

forth above, the provision of the Shareholder's Agreement on which Bischoff relies provides that a transfer is void only if it is "prohibited by this Agreement." But, at the time he brought his claim in 2019, he was time-barred from arguing that the 2011 Transfer was prohibited by the Shareholder's Agreement. Bischoff does not cite any case holding that a party can challenge a transaction after the statute of limitations expired simply because the contract at issue provides that prohibited transactions are void.

In short, New York law recognizes that claims seeking to void corporate transfers or other contractual actions are subject to the statute of limitations. Parties may not, in advance, contract around this well-settled rule of law. And seeking to void a transfer solely based on contract language does not create an open-ended extension of time to assert claims sounding in breach of contract or declaratory judgment. Bischoff's argument to avoid the statute of limitations should therefore be rejected, and the district court's decision affirmed in all respects.

Thus, given that RSM's initial transfer of Boar's Head Group B shares to RPM occurred on September 14, 2011, [D.E. 47-6], and Bischoff did not bring his challenge to the 2011 Transfer until 2019, his challenge is time-barred.[16]

---

[16] The district court's finding that Bischoff waived his argument seeking a declaration that the "related transfer agreement" for the 2011 Transfer was void *ab initio* should also be affirmed. Bischoff's pleadings made no reference to a request to void any "related transfer agreement," and the district court properly held that the assertion in Bischoff's summary judgment papers was untimely. [D.E. 82, p. 17-18].

## II.    BISCHOFF'S CHALLENGE TO THE 2013 AND 2016 TRANSFERS FAILS AS A MATTER OF LAW

Bischoff's challenge to the 2013 and 2016 Transfers also fails as a matter of law. Bischoff asserts that even if his challenge to the 2011 Transfer is time-barred, he can nevertheless obtain an adjudication that the 2011 Transfer purportedly violated the Shareholder's Agreement and thus obtain a declaratory judgment that the 2011 Transfer did not render RPM a Group B Shareholder. Bischoff argues, by extension, that the 2013 and 2016 Transfers to RPM as a Group B Shareholder should be rescinded.

As explained below, Bischoff's argument is nothing more than an attempt to circumvent his failure to timely contest the 2011 Transfer. It is not supported by New York law and violates the statute of limitations applicable to the 2011 Transfer and the plain terms of the Shareholder's Agreement by which RPM necessarily became a Group B Shareholder. The district court's holding that the 2013 and 2016 Transfers of Group B shares to RPM, as a Group B Shareholder, comply with the Shareholder's Agreement should be affirmed.

---

Regardless, Bischoff's belated attempt to rely on a challenge to the 2011 transfer documents to circumvent the statute of limitations is a red herring. His sole basis for seeking to declare the transfer documents "void" is that the transfer allegedly violated the Shareholder's Agreement. He does not claim that the transfer documents somehow violated a statute or public policy. Thus, the six-year statute of limitations applies whether he is seeking to challenge the share transfer itself or the transfer documents that effectuated the share transfer.

**A.    The 2011 Transfer made RPM a Group B Shareholder by the terms of the Shareholder's Agreement, and Bischoff may not contest RPM's status eight years after the 2011 Transfer**

The 2011 Transfer made RPM a Group B Shareholder of Boar's Head, and Bischoff may not contest RPM's status as a Group B Shareholder long after the statute of limitations expired. Accordingly, Bischoff's attempt to avoid the impact of his failure to timely contest the 2011 Transfer was properly rejected by the district court.

**i.    RPM became a Group B Shareholder pursuant to the 2011 Transfer**

Bischoff first argues that whatever the consequences of the 2011 Transfer, it did not make RPM a Group B Shareholder, but instead some other type of "shareholder." [I.B. at 38]. In support, Bischoff relies solely on *Kavanaugh v. Kavanaugh*, 161 N.Y.S.3d 558, 564-65 (N.Y. App. Div. 2021), for the proposition that there is a distinction under New York law between owning company shares as a "shareholder," and being a "Shareholder" pursuant to the terms of a shareholder's agreement. [I.B. at 38]. He claims that RPM is only permitted to retain the shares he received in 2011 as some kind of undefined third type of shareholder under the Shareholder's Agreement, and that the court should adjudicate, more than eight years after the fact, that the 2011 Transfer was purportedly invalid and issue a declaratory judgment that it did not render RPM a Group B Shareholder. [I.B. at 38].

36

This contention fails for multiple reasons. First, the district court properly held that *Kavanaugh* is inapposite. There, unlike here, the agreement at issue explicitly limited the defined term "Shareholder" to the eight children of one of the existing shareholders, while also providing that other individuals could be shareholders without falling within the defined term. *Kavanaugh*, 161 N.Y.S.3d at 564-65. Here, in contrast, the Shareholder's Agreement provides for only Group A or Group B Shareholders and does not allow for any other type of shareholder.

Second, Bischoff is, in substance, seeking a declaration that the 2011 Transfer from a Group B Shareholder (*i.e.*, RSM) to his son (*i.e.*, RPM) did not make RPM a Group B Shareholder. But, for the reasons set forth in Part I above, a long line of New York authority holds that Bischoff is time-barred from seeking a declaratory judgment regarding, or otherwise contesting, RPM's status as a Group B Shareholder by virtue of the 2011 Transfer that occurred more than eight years before Bischoff filed a claim.

Third, Bischoff's contention is contradicted by the plain language of the Shareholder's Agreement, which expressly requires that future recipients of shares must become either Group A or Group B. It does not reference or contemplate any alternative, undefined, third type of "shareholder." Paragraph 3(b) of the Shareholder's Agreement provides that a transferee of Group B shares "shall take such Shares subject to, and shall be fully bound by the terms of [the Shareholder's

Agreement] as if such transferee were a party hereto as *a . . . Group B Shareholder*, as the case may be (based upon the Group of which the transferring Shareholder was a member.)" [D.E. 47-2, p. 6-7 (emphasis added)]. Thus, the Shareholder's Agreement contemplates that a transferee would take ownership of the transferred shares as a Group B Shareholder subject to all of the contractual rights and obligations contained in the Shareholder's Agreement. In other words: the transferee becomes a Group B Shareholder.

Bischoff asserts that this language in Paragraph 3(b), along with Paragraph 4(i), provides that a transferee only assumes the status of a Group A or Group B Shareholder if the transferee receives the shares in compliance with the Shareholder's Agreement. [I.B. at 41-43]. On this basis Bischoff claims that the Shareholder's Agreement provides for some alternative "shareholder" status outside of Group A or Group B where, in his view, a transfer occurs impermissibly. [I.B. at 41-43].

The district court properly rejected Bischoff's strained construction of the Shareholder's Agreement. Bischoff is time-barred from claiming that the 2011 Transfer was not in compliance with the Shareholder's Agreement; therefore, there is no legally cognizable basis to assert that RPM did not become a Group B Shareholder. And there is no basis in the plain language of the Shareholder's Agreement to find that the parties thereto had contemplated some nebulous third

"class" of "shareholders" in the event an alleged prohibited transfer of Boar's Head shares was not timely challenged. To the contrary, the only categories of shareholders contemplated by the Shareholder's Agreement are Group A and Group B, and the classification of future shareholders as Group A or Group B is based on the Group classification of the transferring shareholder. [D.E. 47-2]. Thus, Bischoff's attempt to forge a third category to resurrect his untimely challenge to the 2011 Transfer should be rejected.

### ii. Bischoff cannot challenge RPM's status as a Group B Shareholder eight years after the 2011 Transfer

For the first time on appeal, Bischoff principally relies on a 150-year old decision, *Johnson v. Albany & Susquehanna R.R. Co.*, 54 N.Y. 416, 422-25 (N.Y. 1873), for his contention that even if he is time-barred from challenging the 2011 Transfer as void, that does not prevent him from seeking an adjudication that the 2011 Transfer violated the Stockholder's Agreement and obtaining a declaration that the 2011 Transfer did not render RPM a Group B Shareholder for purposes of the 2013 and 2016 Transfers. [I.B. at 36-37]. *Johnson* is inapposite, and Bischoff's argument runs afoul of the numerous (and more recent) cases discussed in Part I above holding that a corporate transaction cannot be challenged outside the statute of limitations.

*Johnson* involved a narrow set of facts: A subscriber failed to make all required payments for stock certificates, but the company failed to assert its claims

against the subscriber for nonpayment within the statute of limitations. 54 N.Y. at 422-24. In a subsequent proceeding, the subscriber attempted to compel the company to issue the stock certificates as though he had paid the full amount required. *Id.* at 416. The court rejected this argument, holding that while the statute of limitations barred the company from seeking recovery for the unpaid debt, it did not operate to create the fiction that the subscriber had paid amounts it indisputably had not paid. *Id.* at 422-24.[17]

The *Johnson* decision does not apply here. Significantly, in *Johnson*, the subscriber *conceded* that he did not pay the full amount for the stock. *Id.* The subscriber therefore could not use the expiration of the statute of limitations to compel the turnover of stock that he admittedly never paid for. *Id.*

Here, in contrast, Bischoff's belated, disputed claim, seeks to adjudicate the validity of a transaction that occurred well outside the statute of limitations. And, quite the opposite of conceding that the transaction was somehow invalid, the various Boar's Head shareholders have acted in reliance on the validity of that transaction in the intervening years. For example, in 2011, Boar's Head's Board of

---

[17] Bischoff also relies on other lender-debtor cases with similar holdings. *See, e.g.*, *Hulbert v. Clark*, 28 N.E. 638, 638 (N.Y. 1891); *Bank of N.Y. Mellon v. WMC Mortg., LLC*, 39 N.Y.S.3d 892, 898 (N.Y. Sup. Ct. 2016); *Wagner v. Pegasus Cap. Advisors, L.P.*, 2020 WL 6114704, at *2 (N.Y. Sup. Ct. Oct. 16, 2020). Bischoff does not cite any case analogous to the facts here allowing a plaintiff to obtain a declaration as to the validity of a transaction after the statute of limitations expired.

Directors acknowledged that the 2011 Transfer complied with the terms of the Shareholder's Agreement. [D.E. 47-6]. In 2013, the RPM Trust, as a Boar's Head owner, signed an agreement with the other Boar's Head shareholders addressing rights and obligations relating to Boar's Head ownership. [D.E. 47-22]. And in reliance on the effectiveness of the original 2011 Transfer, RSM made two subsequent transfers of Group B shares to RPM in 2013 and 2016, and RPM continued to devote his working life to the business, rising to CEO of the company. [D.E. 47-7; D.E. 47-8]. Critically, each of these transfers occurred within the original statute of limitations that indisputably applied to Bischoff's 2011 Transfer challenge.

Thus, whereas *Johnson* represented an affirmative effort by a party admittedly failing to meet the terms of his contract to obtain a windfall for nonpayment of amounts owed, here Bischoff is asking the court to reach back more than a decade and adjudicate a disputed contractual claim that Bischoff first raised well after the statute of limitations expired. Bischoff's attempt to distinguish between a "right" and a "remedy" to justify this extraordinary request is spurious.[18] He is seeking

---

[18] The treatises cited by Bischoff are not controlling statements of New York law and, in all events, do not support his position. For example, Bischoff quotes language in 75 N.Y. Jur. 2d *Limitations and Laches* § 23 (2023) that "the 'expiration of the statutory limitations period does not cure the underlying wrong' but merely 'extinguishes the right to judicial relief.'" [I.B. at 34]. However, the sole case cited by N.Y. Jur. for that proposition actually undermines Bischoff's argument. It cites *Rural Community Coalition, Inc. v. Village of Bloomington*, 987 N.Y.S.2d 654 (N.Y. App. Div. 2014). In that case, in the context of a preliminary injunction application, the plaintiffs challenged the annexation of property by the village as "void" because

remedies of adjudicating his time-barred claim as to the alleged invalidity of the 2011 Transfer and a declaration that the transfer purportedly did not render RPM a Group B Shareholder. There is no legal or equitable basis to extend *Johnson* to these facts, particularly given that Bischoff had ample opportunity to assert his contractual challenge within the statute of limitations.

Thus, under New York law, Bischoff was obligated to challenge the 2011 Transfer establishing RPM as a Group B Shareholder by no later than September 2017. *See* C.P.L.R. § 213(2). The district court meticulously walked through the evidence demonstrating pursuant to the applicable transfer documents and Shareholder's Agreement that RPM received the additional shares in 2013 and 2016 based on his status as a Group B Shareholder. [D.E. 82, p. 26-27]. As such, the district court properly concluded Bischoff's challenge to those transfers fails as a matter of law and fact.

---

it was not approved by referendum as required. *Id.* at 658. The New York Appellate Division held that the claim was untimely under the statute of limitations, holding: "We are unpersuaded by plaintiffs' assertion that, in essence, a failure to conduct a referendum leaves the annexation subject to being set aside at any time in the future without regard to any time limitation." And later in that case on a motion to dismiss, the Appellate Division reaffirmed its holding and dismissed the claim pursuant to the statute of limitations. *Rural Cmty. Coalition, Inc. v. Vill. of Bloomingburg*, 6 N.Y.S.3d 758, 759-60 (N.Y. App. Div. 2015).

## III.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN REJECTING BISCHOFF'S UNTIMELY AND UNSUPPORTED EQUITABLE ESTOPPEL DEFENSE

### A.   Bischoff waived his equitable estoppel defense by failing to raise it until after discovery concluded in his response to RSM's motion for summary judgment

The district court did not abuse its discretion in finding that Bischoff waived his equitable estoppel defense by failing to raise it until filing his response to RSM's motion for summary judgment. [D.E. 82, p. 20-21].

When a party waits to raise a new defense until after the close of discovery, courts have repeatedly recognized such prejudice warrants finding the defense was waived. *See Kleiman v. Wright*, 2020 WL 5632654, at *32 (S.D. Fla. Sep. 18, 2020) ("[T]he Court finds that raising this defense at this 'eleventh hour' after two years of extensive discovery is improper and prejudicial."); *Nat'l Health Fin. DM, LLC v. Sea Spine Orthopedic Inst.*, 2022 WL 2065045, at *7 (S.D. Fla. June 8, 2022) (noting plaintiff would be prejudiced if defense raised two months after close of discovery was permitted to go forward).

After the close of discovery in response to RSM's motion for summary judgment, Bischoff asserted for the first time that equitable estoppel should bar RSM from invoking the statute of limitations. [D.E. 56, p. 25-27]. Bischoff's delay is inexcusable, as he was aware of the statute of limitations issue since the inception of the case. As the district court noted, RSM specifically pled in paragraph 50 of his

complaint that any challenge to the 2011 Transfer was time-barred after September 14, 2017, and Bischoff did not assert a claim until serving his notice of arbitration on October 9, 2019. [D.E. 82, p. 20]. But in his answer responding to paragraph 50 of the complaint (or elsewhere), Bischoff never raised equitable estoppel as a defense to RSM's statute of limitations argument.

Bischoff relies on *Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1350-51 (11th Cir. 2007), for the contention that the district court abused its discretion in finding waiver without making express findings whether the other party had notice of the defense or could legitimately claim surprise and prejudice. [I.B. at 55]. But *Proctor* supports RSM's position. There, the court declined to find waiver for two reasons: (1) the asserted defense was not well-developed through pre-existing federal case law, which weighed in favor of providing more leeway on the timing of raising the argument, and (2) there was no indication in the record whether the defendant had prior notice of the defense. 494 F.3d at 1351. By contrast, the court specifically noted that "[t]he general rule of waiver is more easily applied when a party fails to set forth one of the nineteen defenses specifically listed in Rule 8(c)." *Id.* Here, "estoppel" is one of the nineteen defenses listed in Federal Rule 8(c). And there is no basis in the record supporting Bischoff's contention that he could not have raised it sooner.

Bischoff's conclusory reference to the supposed newly discovered evidence that he cited in his motion to supplement (regarding a non-party's consideration of a potential share transfer in 2009, before the 2011 Transfer even occurred), is a red herring. Bischoff obtained those documents in discovery in another case *after* he belatedly asserted his equitable estoppel defense in this case. Thus, his acquisition of those documents does not address why he failed to raise estoppel in response to RSM's complaint or prior to the close of discovery. Moreover, as discussed above, the documents from the other case where Bischoff is suing yet another one of his cousins in an effort to appropriate for himself even more Boar's Head shares belonging to his family members have nothing to do with RSM or the transfers at issue.

Regardless, prejudice to RSM from Bischoff's belated assertion of equitable estoppel is supported by the record, and thus the district court did not abuse its discretion in holding that Bischoff waived the defense. Bischoff seeks to have the court sweep this prejudicial delay under the rug by arguing that there was discovery as to "Eric's knowledge of the 2011 Transfer." [I.B. at 53]. But discovery as to Bischoff's knowledge of the transfer is not equivalent to discovery as to each of the elements of his equitable estoppel defense (discussed below). RSM had no reason to foresee Bischoff's equitable estoppel argument in the case, and Bischoff did not make any allegations in the pleadings to give RSM notice of what Bischoff is

claiming as to each of the elements of this affirmative defense. Thus, there was no

opportunity to pursue fulsome discovery on these issues.[19]

Accordingly, this Court should affirm the district court's ruling on waiver.

**B.     At any rate, the district court's holding that Bischoff has not raised a genuine issue of material fact on the elements of equitable estoppel is not clearly erroneous**

Assuming in the alternative that Bischoff did not waive his equitable defense,

it nevertheless fails as a matter of law because he did not properly plead, let alone

submit sufficient evidence to support, his contention that RSM should be estopped

from asserting that the statute of limitations bars Bischoff's challenges to the

transfers.

Equitable estoppel only applies when a plaintiff was "induced by fraud,

misrepresentation, or deception to refrain from filing a timely action." *Zumpano v.

Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006). To properly plead equitable estoppel, a party

must assert that such fraud or misrepresentations are "affirmative and specifically

directed at preventing the party from bringing suit" and the plaintiff "reasonabl[y]

---

[19] Bischoff's waiver cases are inapposite. For example, *Sweet v. Secretary, Department of Corrections* involved a habeas petition, and the government's defense at issue was raised only 36 days after its initial response to the petition. 467 F.3d 1311, 1320 (11th Cir. 2006). In *Edwards v. Fulton County*, also cited by Bischoff, the Court held that the district court did not abuse its discretion in finding that there was no waiver when discovery had been "largely focused" on the defense at issue – *i.e.*, whether the disparity in pay for the plaintiff was based on a gender-neutral classification system. 509 F. App'x 882, 888 (11th Cir. 2013).

reli[ed] on the defendant's misrepresentations." *Twerskey v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442-43 (S.D.N.Y. 2014); *see also Kaufman v. Cohen*, 760 N.Y.S.2d 157, 167 (N.Y. App. Div. 2003) (equitable estoppel "requires proof that [i] the [party asserting the statute of limitations] made an actual misrepresentation or, if a fiduciary, concealed facts which he was required to disclose, [ii] that the plaintiff relied on the misrepresentation and [iii] that the reliance caused plaintiff to delay bringing timely action"). "A plaintiff must . . . establish that subsequent and specific actions by defendants somehow kept [him or her] from timely bringing suit." *Putter v. N. Shore Univ. Hosp.*, 7 N.Y.3d 548, 552 (N.Y. 2006) (internal quotation marks omitted).

Notably, as a case Bischoff himself cites makes clear, an allegation of a mere failure to disclose the facts giving rise to the claim is not sufficient to plead an equitable estoppel claim. *See Bank of N.Y. Mellon v. WMC Mortg., LLC*, 39 N.Y.S.3d 892, 896 (N.Y. Sup. Ct. 2016) ("Where the alleged concealment consisted of nothing but defendants' failure to disclose the wrongs they had committed" equitable estoppel did not apply (internal brackets and ellipses omitted)); *see also Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189, 198 (N.Y. 2007) ("[M]ere silence or failure to disclose the wrongdoing is insufficient." (internal quotes omitted)). Additionally, "due diligence on the part of the plaintiff in bringing his action is an

essential element of equitable estoppel." *Marshall*, 569 N.Y.S.2d at 112 (internal quotes and ellipses omitted).

Bischoff's response is premised on a legally insufficient contention: that "RSM concealed the Purported Transfer for years" and failed to "keep [Bischoff] informed of ownership changes." [D.E. 56, p. 31-32]. This argument fails for the threshold reason that Bischoff has not shown that RSM, under the Shareholder's Agreement or otherwise, had any duty to disclose the transfers to Bischoff, and thus this argument is nothing more than an assertion of a "failure to disclose," which Bischoff's own case holds is insufficient. *See Bank of N.Y Mellon*, 39 N.Y.S.3d at 896. In the district court, Bischoff asserted, without legal support, that RSM had a fiduciary duty to inform him of ownership changes. [D.E. 56, p. 5 n.3]. But Bischoff has abandoned that argument on appeal and now argues that "*[t]he Company* concealed this information from [him] despite its agreement in 2008 to keep Eric apprised of any ownership changes." [I.B. at 15 (emphasis added)]. But Bischoff does not cite any evidence reflecting any such purported "agreement," let alone an agreement *by RSM*. Bischoff's failure to provide evidence of any misrepresentation or duty to disclose by RSM is fatal to his equitable estoppel argument.

Bischoff's equitable estoppel argument also fails because he failed to show due diligence or reasonable reliance in asserting his claim. The 2013 Recission Agreement identified the RPM Trust as an owner; yet he did nothing to investigate

the claim. [D.E. 47-11]. Regardless, Bischoff admits that he knew, by July 2015, that RPM obtained shares in Boar's Head, and he therefore had more than two years to file suit. [D.E. 47-11; D.E. 47-1, p. 7]. Bischoff also concedes that in February 2017, still before the expiration of the statute of limitations, he was given a detailed, written listing of all owners and their shareholdings. [D.E. 47-13]. Bischoff was indisputably on notice well before the statute of limitations expired, on multiple occasions, that RPM was an owner of Boar's Head, but he chose not to contest his ownership until October 2019. Thus, he has failed to plead or raise a genuine issue of material fact regarding, these elements of equitable estoppel. *See Bacon v. Nygard*, 35 N.Y.S.3d 25, 26 (N.Y. App. Div. 2016) (denying equitable estoppel defense where "plaintiff had sufficient knowledge to bring an action more than a year before he commenced this action"); *Marshall*, 569 N.Y.S.2d at 112 (rejecting equitable estoppel argument where stockholder received copy of stock transfer agreement one year before statute of limitations ran). Just as importantly, he was aware of RPM's ownership well before the statute of limitations expired in 2017, and therefore he could have timely brought his claim.[20]

---

[20] Bischoff's case *Langston v. MFM Contracting Corp.*, 102 N.Y.S.3d 12 (N.Y. App. Div. 2019), is inapposite. In that case, the Court held that the defendant's "evasiveness in response to plaintiffs' requests for information about its relationship to the pipe or the function of the pipe is an affirmative act of concealment that could give rise to equitable estoppel." *Id.* at 13. Here, Bischoff submits no evidence that he ever even asked RSM (or RPM) about RPM's ownership. Significantly, the Court in *Langston* also relied on the fact that the plaintiff "discovered information

The invocation of equitable estoppel in New York is a high bar. *See Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 616 (S.D.N.Y. 2021), *aff'd*, 2022 WL 211702 (2d Cir. Jan. 25, 2022) ("Equitable estoppel is an extraordinary remedy, that is to be invoked sparingly and only under exceptional circumstances." (internal quotes omitted)). Much like its rejection of the discovery rule, New York allows equitable estoppel to vary from the presumptive statute of limitations in only limited circumstances and only where each of the elements of equitable estoppel are established. Bischoff has failed to plead or raise a genuine issue of material fact on *any* of the elements of New York's narrow equitable estoppel defense. Thus, the district court's alternative holding rejecting Bischoff's equitable estoppel defense was not clearly erroneous and should be affirmed.

## CONCLUSION

For the foregoing reasons, Appellee respectfully requests that the Court affirm the judgment of the district court in its entirety.

---

sufficient to prompt further inquiry only after the statute of limitations had expired." *Id.* Here, Bischoff was on notice of RPM's ownership before the statute of limitations expired.

Respectfully submitted,

Gunster, Yoakley & Stewart, P.A.

By:  */s/ Lauren V. Purdy*
    William J. Schifino, Jr.
    Florida Bar No. 564338
    Lauren V. Purdy
    Florida Bar No. 93943
    John A. Schifino
    Florida Bar No.  72321
    Justin P. Bennett
    Florida Bar No. 112833
    wschifino@gunster.com
    lpurdy@gunster.com
    jschifino@gunster.com
    jbennett@gunster.com
    cwarder@gunster.com
    awinsor@gunster.com
    tbacchus@gunster.com
    401 E. Jackson Street, Suite 1500
    Tampa, Florida 33602
    Tel: (813) 228-9080
    Fax: (813) 228-6739

Golenbock Eiseman Assor Bell & Peskoe LLP
Martin S. Hyman
Matthew C. Daly
mhyman@golenbock.com
mdaly@golenbock.com
711 Third Avenue
New York, New York 10017
Tel:  (212) 907-7300
Fax:  (212) 754-0330

*Counsel for Plaintiff-Appellee, Robert S. Martin*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Fed R. App. P. 32(a)(7)(B) because it contains 12,145 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-counting feature of Microsoft Office 365.

The brief complies with the type face requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Time New Roman.

*/s/ Lauren V. Purdy*
Lauren V. Purdy

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 29, 2024, I electronically filed the foregoing with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served on all counsel of record in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

*/s/ Lauren V. Purdy*
Lauren V. Purdy