No. 23-13851-A

# United States Court of Appeals
### *for the*
# Eleventh Circuit

ROBERT MARTIN,

*Plaintiff-Appellee,*

– v. –

ERIC BISCHOFF,

*Defendant-Appellant.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
DOCKET NO. 8:21-CV-01045-MSS-AAS

## REPLY BRIEF FOR DEFENDANT-APPELLANT

MICHAEL E. SWARTZ
TALEAH E. JENNINGS
RANDALL T. ADAMS
MINJI REEM
MARK L. GARIBYAN
SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
(212) 756-2000

DUANE A. DAIKER
JAIME AUSTRICH
SHUMAKER, LOOP & KENDRICK,
LLP 101 East Kennedy Boulevard
Tampa, Florida 33602
(813) 229-7600

*Counsel for Defendant-Appellant*

*Robert Martin v. Eric Bischoff*, No. 23-13851-A

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1 *et seq*., Defendant-Appellant Eric Bischoff states the following trial judges, attorneys, persons, association of persons, firms, partnerships, or corporations have an interest in the outcome of this appeal:

1.  Adams, Randall T. (Counsel for Defendant-Appellant)

2.  Austrich, Jaime (Counsel for Defendant-Appellant)

3.  Bennett, Justin P. (Counsel for Plaintiff-Appellee)

4.  Bischoff, Eric (Defendant-Appellant)

5.  Buese, Alexis Miller (Counsel for Plaintiff-Appellee)

6.  Daiker, Duane A. (Counsel for Defendant-Appellant)

7.  Daly, Matthew C. (Counsel for Plaintiff-Appellee)

8.  Dietrich, Daniel P. (Counsel for Plaintiff-Appellee)

9.  Garibyan, Mark L. (Counsel for Defendant-Appellant)

10. Golenbock Eiseman Assor Bell & Peskoe LLP (Counsel for Plaintiff-Appellee)

11. Gunster, Yoakley & Stewart, P.A. (Counsel for Plaintiff-Appellee)

12. Hyman, Martin S. (Counsel for Plaintiff-Appellee)

13. Jennings, Taleah E. (Counsel for Defendant-Appellant)

14. Koche, David L. (Counsel for Plaintiff-Appellee)

*Robert Martin v. Eric Bischoff*, No. 23-13851-A

15.    Martin, Robert P. (Beneficiary of the RPM 2005 Family Trust)

16.    Martin, Robert S., as trustee of the Martin 2008-A Investment Trust, the Martin 2013-A Investment Trust, the RPM 2005 Family Trust, and the RSM 1988 Trust (Plaintiff-Appellee)

17.    Martin, Robert S., in his individual capacity

18.    Reem, Minji (Counsel for Defendant-Appellant)

19.    Sansone, Amanda Arnold (U.S. Magistrate Judge)

20.    Saviano, Edward S. (Counsel for Defendant-Appellant)

21.    Saviano PC (Counsel for Defendant-Appellant)

22.    Schaffnit, Brian W. (Counsel for Defendant-Appellant)

23.    Schifino, William J. (Counsel for Plaintiff-Appellee)

24.    Schulte Roth & Zabel LLP (Counsel for Defendant-Appellant)

25.    Scriven, Mary S. (U.S. District Judge)

26.    Shumaker Loop & Kendrick, LLP (Counsel for Defendant-Appellant)

27.    Swartz, Michael E. (Counsel for Defendant-Appellant)

\* \* \*

Pursuant to Eleventh Circuit Rule 26.1-3(b), Defendant-Appellant Eric Bischoff certifies that there is no publicly traded company or corporation that has an interest in the outcome of this case or appeal.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ......................................................................i

TABLE OF CONTENTS..............................................................................i

TABLE OF CITATIONS .......................................................................... iii

INTRODUCTION ......................................................................................1

ARGUMENT ..............................................................................................4

    I.    EVEN IF THE 2011 TRANSFER IS BEYOND THE STATUTE
        OF LIMITATIONS, THAT DOES NOT RENDER THE 2013
        AND 2016 TRANSFERS VALID. .......................................................4

        A.    RSM Does Not Dispute That the Statute of Limitations is a
             Procedural Bar That Does Not Alter or Extinguish
             Contractual Rights and Obligations. ...........................................4

             1.    RSM's Attempt to Run Away From Controlling New
                  York Authority is Unavailing. ........................................5

             2.    RSM's Attempt to Mischaracterize Eric's Argument
                  as an "End Run" Around the Statute of Limitations is
                  Unavailing.......................................................................7

        B.    The "Group A" and "Group B" Contractual Designations in
             the Shareholder's Agreement Does Not Make the RPM
             Trust a Group B Shareholder. ....................................................9

    II.    THE STATUTE OF LIMITATIONS IS NOT A DEFENSE TO
        ERIC'S DECLARATORY JUDGMENT CLAIM
        CHALLENGING THE 2011 TRANSFER AS VOID *AB INITIO*
        IN ANY EVENT. ...............................................................................14

        A.    RSM Provides No Viable Basis for Disregarding *Riverside*
             and *Faison*, Controlling Authorities by New York's Highest
             Court...........................................................................................14

B.    RSM's Authorities Do Not Undermine *Riverside* and *Faison*'s Application to Eric's Declaratory Judgment Counterclaim. ..........................................................................17

C.    In the Alternative, to the Extent There is Any Ambiguity Regarding the Application of *Riverside* and *Faison*, This Court Should Certify the Question to the New York Court of Appeals. ..............................................................................19

III.    RSM'S BRIEF CONFIRMS THAT THE DISTRICT COURT ERRED BY REJECTING ERIC'S EQUITABLE ESTOPPEL DEFENSE. ..........................................................................21

A.    RSM Fails to Defend the District Court's Finding of Waiver. ..............................................................................22

B.    RSM Does Not Defend the District Court's Erroneous Factual Finding Concerning Eric's Knowledge of the 2011 Transfer in 2015. ...................................................................26

CONCLUSION .............................................................................................28

CERTIFICATE OF COMPLIANCE .............................................................29

CERTIFICATE OF SERVICE .......................................................................30

## <u>TABLE OF CITATIONS</u>

**Cases**                                                                                     **Page(s)**

*Access Now, Inc. v. Sw. Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004) ..................................................................14, 23

*Busher v. Barry*,
   20-3587, 2021 WL 5071871 (2d Cir. Nov. 2, 2021)
   (Summary Order) ..................................................................................18, 19, 21

*Corp. Universe, Inc. v. Emry Cap. Grp., Inc.*,
   No. 21-CV-06923, 2023 WL 5629230 (S.D.N.Y. Aug. 31, 2023) ....................19

*Cross Sound Cable Co. v. Long Island Lighting Co.*,
   No. 21-CV-2771, 2022 WL 247996 (E.D.N.Y. Jan. 27, 2022).............18, 19, 21

*Edwards v. Fulton County*,
   509 F. App'x. 882 (11th Cir. 2013).......................................................22, 23, 25

*\*\*Faison v. Lewis*,
   32 N.E.3d 400 (N.Y. 2015) ........................................... 14, 15, 16, 17, 19, 20, 21

*Francis v. Heckler*,
   749 F.2d 1562 (11th Cir. 1985) ........................................................................26

*Garrett v. Music Publ'g Co. of Am., LLC*,
   740 F. Supp. 2d 457 (S.D.N.Y. 2010) ..............................................................27

*Grant v. Preferred Rsch., Inc.*,
   885 F.2d 795 (11th Cir. 1989) ..........................................................................23

*Hassan v. U.S. Postal Serv.*,
   842 F.2d 260 (11th Cir. 1988) ..........................................................................22

*Henry v. Phixios Holdings, Inc.*,
   No. 12504–VCMR, 2017 WL 2928034 (Del. Ch. July 10, 2017) ........11, 12, 13

*\*\*Johnson v. Albany & Susquehanna R.R. Co.*,
   54 N.Y. 416 (1873) .......................................................................................5, 6, 8

*Kassab v. Kasab*,
No. 14428/2013, 2014 WL 11498024 (N.Y. Sup. Ct. Mar. 12,
2014), *aff'd*, 29 N.Y.S.3d 39 (App. Div. 2016)...................................................17

*Kleiman v. Wright*,
No. 18-cv-80176, 2020 WL 5632654 (S.D. Fla. Sept. 18, 2020).................23, 24

*Lake Eola Builders, LLC v. Metro. at Lake Eola, LLC*,
416 F. Supp. 2d 1316 (M.D. Fla. 2006).................................................................9

*Med. Ctr. BPB, Inc. v. Humana, Inc*.,
No. 15-81150-CV, 2015 WL 12815285 (S.D. Fla. Oct. 15, 2015) ....................18

*Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*,
573 F.3d 1124 (11th Cir. 2009) ..........................................................................18

*Mosher v. Speedstar Div. of AMCA Int'l, Inc*.,
52 F.3d 913 (11th Cir. 1995) ..............................................................................20

*Nat'l Health Fin. DM, LLC v. Sea Spine Orthopedic Inst., LLC*,
No. 21-60405-CIV, 2022 WL 2065045 (S.D. Fla. June 8, 2022) ......................24

*New Enter. Assocs. 14, L.P. v. Rich*,
295 A.3d 520 (Del. Ch. 2023) ......................................................................10, 11

*Pacchiana v. Pacchiana*,
462 N.Y.S.2d 256 (App. Div. 1983)....................................................................16

*Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*,
684 F.3d 1211 (11th Cir. 2012) ..........................................................................23

*Planned Consumer Mktg., Inc. v. Coats & Clark, Inc.*,
522 N.E.2d 30 (N.Y. 1988)..................................................................................10

*Proctor v. Fluor Enters., Inc*.,
494 F.3d 1337 (11th Cir. 2007) .....................................................................23, 25

**Riverside Syndicate, Inc. v. Munroe*,
882 N.E.2d 875 (N.Y. 2008)......................................... 14, 15, 16, 17, 19, 20, 21

*Sweet v. Sec'y, Dep't of Corr.*,
467 F.3d 1311 (11th Cir. 2006) ..........................................................................25

iv

**Statutes & Rules**

Delaware General Corporation Law ("DGCL")

    8 Del. C. § 159 ...............................................................................11

    8 Del. C. § 202 ...............................................................................11

    8 Del. C. § 220 ...............................................................................12

22 N.Y.C.R.R. § 500.27...................................................................20

N.Y. Civil Practice Law & Rules ("CPLR"),

    CPLR § 213(1)...............................................................................14

    CPLR § 213(2)...........................................................2, 14, 18, 19, 20

2d Cir. Loc. R. 32.1.1(a) ................................................................18

Fed. R. Civ. P. 8(c).............................................................23, 24, 25

**Other Authorities**

Summ. Order at 1, *Busher v. Barry*,
    20-3587 (2d Cir. Nov. 2, 2021), Doc. 95-1 ......................................18

Ex. A to Pl. Reply Br. (Shareholders' Agreement), *Henry v. Phixios
    Holdings, Inc.*, 12504-VCF (Del. Ch. Sept. 14, 2016), Doc. 29 .......................12

**INTRODUCTION**

The core question in this case is whether RSM's purported transfers of Boar's Head shares to the RPM Trust in 2011, 2013, and 2016 were valid transfers under the Shareholder's Agreement.[1]  As detailed in Eric's initial brief, the District Court erred as a matter of law in holding that RSM's transfers of shares in 2013 and 2016 were valid under the Shareholder's Agreement.

Specifically, the District Court held that, because Eric is time-barred from challenging the 2011 Transfer, RSM's initial transfer of 2.4 shares to the RPM Trust in 2011 was *necessarily* valid and rendered the RPM Trust a Group B Shareholder under the Shareholder's Agreement.  On that basis, the District Court concluded that RSM's subsequent transfers in 2013 and 2016 of another 720 shares were also valid transfers from one Group B Shareholder (the RSM Trust) to another (the RPM Trust).

Importantly, RSM does not dispute that, under the Shareholder's Agreement, any attempted transfer of shares is void *ab initio* <u>unless</u> it complies with the Transfer Restrictions contained in the Shareholder's Agreement.  Yet, in his 50 pages of briefing, RSM offers no cogent explanation as to how the District Court could

---

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in Eric's initial brief.  Eric's initial brief and appendix, Docs. 32 and 34, are cited herein as "IB at __" and "Eric App. at __," respectively.  RSM's brief and appendix, Docs. 37 and 38, are cited herein as "AB at __" and "RSM App. at __," respectively.

properly have determined that the 2013 and 2016 Transfers were valid without first assessing whether the initial 2011 Transfer complied with the Transfer Restrictions. RSM's utter failure to respond to that fundamental issue confirms that the District Court erred as a matter of law and should be reversed.

*First*, without citing a single authority in support, RSM insists that, because Eric is time-barred from challenging the validity of the 2011 Transfer, that *necessarily* means that the transfer was valid and made the RPM Trust a Group B Shareholder under the Shareholder's Agreement. But, as detailed in Eric's initial brief, that argument is foreclosed by longstanding New York law, which clearly provides that the statute of limitations is a procedural bar that merely suspends Eric's ability to seek a judicial remedy with respect to the 2011 Transfer; it does not alter or extinguish the parties' underlying contractual obligations. Thus, even if Eric's claims challenging the 2011 Transfer are time-barred, that does not render the RPM Trust a Group B Shareholder under the Shareholder's Agreement, so as to sanction the subsequent 2013 and 2016 Transfers.

Notably, RSM does not dispute that the statute of limitations can only bar remedies, and that the passage of time cannot turn a non-party to a contract into a party. Accordingly, at a minimum, the District Court's determination that the 2013 and 2016 Transfers were valid must be reversed.

*Second*, the six-year limitation period under CPLR § 213(2) does not apply to Eric's claims challenging the 2011 Transfer in any event based on binding precedent from the Court of Appeals, New York's highest court.  RSM attempts to distinguish those binding authorities and relies instead on non-binding, expressly non-precedential federal authority from the Second Circuit.  However, this Court is bound to interpret New York law consistent with the New York Court of Appeals, not the Second Circuit.  To the extent there is any doubt here, this Court should certify this particular question to the Court of Appeals.

*Finally*, RSM fails to defend the District Court's holding that Eric waived his equitable estoppel defense by not expressly pleading it in his answer.  This Court's longstanding authorities—which RSM ignores—make clear that the failure to include an affirmative defense in the pleadings is merely a technical nonconformity that does not constitute waiver where, as here, the other party had notice of the defense and was not prejudiced by the delay.  RSM's late-breaking attempt to claim he was prejudiced—an argument he never raised below—fails as a matter of law.

Accordingly, for the reasons set forth in Eric's initial brief and herein, the District Court's decision should be reversed and the case should be remanded.

**ARGUMENT**

I.    **EVEN IF THE 2011 TRANSFER IS BEYOND THE STATUTE OF LIMITATIONS, THAT DOES NOT RENDER THE 2013 AND 2016 TRANSFERS VALID.**

RSM insists that, because Eric is time-barred from challenging the 2011 Transfer, that "necessarily" made the RPM Trust a Group B Shareholder under the Shareholder's Agreement—*regardless* of whether the transfer complied with the Transfer Restrictions contained therein. Tellingly, however, RSM cites no authority in support of his position. That is because it is contrary to the axiomatic principle that the statute of limitations is a procedural bar that suspends a party's ability to seek a judicial remedy, but it does not alter existing contractual rights and obligations. [*See* IB at 33-39.]

A.    **RSM Does Not Dispute That the Statute of Limitations is a Procedural Bar That Does Not Alter or Extinguish Contractual Rights and Obligations.**

RSM has no response to the fundamental principle that the statute of limitations is a procedural bar that does not, as a matter of law, make the RPM Trust a Group B Shareholder. Instead, RSM tries to avoid it altogether by running away from longstanding New York authority and mischaracterizing Eric's argument. [AB at 39-42.]

1.     **RSM's Attempt to Run Away From Controlling New York Authority is Unavailing.**

RSM fails to offer a single authority that supports his position that, because Eric is time-barred from challenging the 2011 Transfer, that "necessarily" made the RPM Trust a Group B Shareholder under the Shareholder's Agreement. That is because, as detailed in Eric's initial brief, New York courts have long held the opposite, *i.e.*, that the statute of limitations has no effect on parties' contractual rights and obligations. [*See* IB at 33-34.] RSM offers no explanation for the District Court's departure from the long line of New York cases where courts determined parties' rights and obligations under contracts *even though* the parties' claims concerning those rights and obligations were time-barred. [*See* IB at 35-37.]

RSM tries to sidestep the New York Court of Appeals' core holding in *Johnson v. Albany & Susquehanna Railroad Company* by emphasizing inapposite factual distinctions. 54 N.Y. 416 (1873). He claims that *Johnson* "does not apply here" because, unlike the plaintiff there who "conceded" that he did not satisfy his contractual payment obligations, RSM does not concede that the 2011 Transfer was invalid. [AB at 40-41.]

RSM misses the point. *Johnson* did not turn on whether the plaintiff conceded or disputed his failure to satisfy his contractual payment obligations under the stock subscription agreement at issue. Rather, as RSM aptly summarizes in his brief, the point of *Johnson* was that, while the statute of limitations barred the company from

5

suing to enforce the plaintiff's payment obligations under the subscription agreement, that statutory time bar "*did not operate to create the fiction*" that the plaintiff had made the requisite payments under the agreement, so as to entitle him to the company's stock certificates despite his failure to make the requisite payments.  [AB at 40 (citing *Johnson*, 54 N.Y. at 422-24) (emphasis added).]

Likewise, here, even if Eric is time-barred from seeking a judicial remedy with respect to the 2011 Transfer, that "did not operate to create the fiction" that the 2011 Transfer satisfied the Transfer Restrictions so as to render the RPM Trust a party to the Shareholder's Agreement as a Group B Shareholder.  That fundamental principle holds true regardless of any factual distinctions between the circumstances here and those in *Johnson*.

Nor does RSM meaningfully address any of the other New York cases cited on pages 36-38 of Eric's initial brief.  Instead, he summarily dismisses them as "other lender-debtor cases" [AB at 40 n.17], but has no response to the fundamental procedural—rather than substantive—nature of the statute of limitations that those cases demonstrate.  [IB at 36-38.]

RSM also tries to hide from the multiple authoritative treatises cited in Eric's initial brief—Siegel, Moore's Federal Practice and Procedure, and New York Jurisprudence [*see* IB at 33-34]—by summarily rejecting them in a footnote as "not controlling statements of New York law."  [AB at 41 n.18.]  But RSM does not,

because he cannot, respond to the *substance* of those treatises, which uniformly state that the statute of limitations does not eliminate substantive rights or obligations; it merely suspends the remedy.

### 2.    RSM's Attempt to Mischaracterize Eric's Argument as an "End Run" Around the Statute of Limitations is Unavailing.

With no authority to support his position, RSM tries to muddy the waters by mischaracterizing Eric's argument concerning the validity of the 2013 and 2016 Transfers.  He insists that, by asking the District Court to assess whether the 2011 Transfer complied with the Transfer Restrictions in order to determine whether the 2013 and 2016 Transfers were valid, Eric is attempting an "end-run" around the statute of limitations by seeking "a declaratory judgment" regarding the validity of the 2011 Transfer.  [*See* AB at 37-42.]  RSM fundamentally mischaracterizes Eric's argument on this point.

As clearly set forth in Eric's initial brief, Eric contends that, in order for the District Court to properly determine the validity of the 2013 and 2016 Transfers, it was required to conduct the predicate analysis as to whether the 2011 Transfer complied with the Transfer Restrictions, given that the 2011 Transfer was the basis upon which the District Court found the RPM Trust to be a Group B Shareholder. [IB at 37-39.]   Seeking that predicate analysis is not the same as seeking "a declaratory judgment" concerning the 2011 Transfer, as RSM erroneously contends. That predicate analysis concerning the 2011 Transfer—which is necessary for

assessing the validity of the 2013 and 2016 Transfers—is precisely the kind of assessment of parties' contractual rights and obligations that *Johnson* and other New York courts have long held are *not* extinguished by the statute of limitations.[2]

Nor does the supposed time bar somehow create a presumption that the RPM Trust became a Group B Shareholder. RSM contends that "[Eric] is time-barred from claiming that the 2011 Transfer was not in compliance with the Shareholder's Agreement; *therefore*, there is no legally cognizable basis to assert that RPM *did not become* a Group B Shareholder." [AB at 38 (emphasis added).] Just the opposite is true.

As New York's highest court made clear in *Johnson*, the expiration of the limitation period does not "produc[e] any presumption" that the 2011 Transfer complied with the Transfer Restrictions or exempt it from the restrictions altogether. *Johnson*, 54 N.Y. at 424-25. Rather, the burden is on RSM, as the party who moved for summary judgment—<u>not</u> Eric—to show that "there is no genuine issue as to any material fact" concerning whether the 2011 Transfer was valid under the

---

[2] To be clear, as discussed below in Section II, Eric separately contends that the District Court erred in finding Eric's declaratory judgment claim concerning the 2011 Transfer time-barred. However, Eric's position with respect to the validity of the 2013 and 2016 Transfers—that the statute of limitations does not preclude the District Court from assessing whether the 2011 Transfer complied with the Transfer Restrictions—is not a request for declaratory judgment concerning the 2011 Transfer, nor does it depend on one.

Shareholder's Agreement. *Lake Eola Builders, LLC v. Metro. at Lake Eola, LLC*, 416 F. Supp. 2d 1316, 1317 (M.D. Fla. 2006).

### B. The "Group A" and "Group B" Contractual Designations in the Shareholder's Agreement Does Not Make the RPM Trust a Group B Shareholder.

With nothing to say to the fundamental nature of the statute of limitations, RSM advances a circular argument that has no footing in the law or logic.

RSM challenges the explanation in Eric's initial brief that, *at most*, a time bar on Eric's claims concerning the 2011 Transfer would mean the RPM Trust would continue to hold the 2.4 shares that were the subject of the 2011 Transfer, without ever becoming a party to the Shareholder's Agreement as a Group B Shareholder. [IB at 37.] RSM argues that, because the Shareholder's Agreement provides for only two "classification[s]" of shareholders—Group A and Group B—and does not contemplate "some nebulous third 'class' of 'shareholders,'" the RPM Trust "could not be anything other than a Group B Shareholder" as a result of its receipt of shares in 2011. [AB at 26, 38-39.] That argument ignores fundamental Delaware law.

*First*, RSM misreads the Shareholder's Agreement by insisting that any transferee who receives shares from a Group A or Group B Shareholder "***must become*** either Group A or Group B," regardless of whether the transfer complied with the Transfer Restrictions. [AB at 37 (emphasis added).] However, the plain language of the Shareholder's Agreement makes clear that a transferee becomes a

new Group A or Group B Shareholder *if and only if* the transfer complies with the Transfer Restrictions.  [*See* IB at 42; Doc. 49-1 at 14, ¶ 4(i).]

*Second*, as a factual matter, RSM's "classifications" of Group A and Group B shares is wrong.  The Company does not issue Group A or B shares.  As the Company's Board of Directors and its shareholders, including RSM, acknowledged, the Company has only a single class of shares:  "5,000 shares of common stock, $100 par value per share[.]"  [Eric App. at 361.]

*Third*, RSM is also wrong that the RPM Trust could not possibly hold the 2.4 shares as "anything other than a Group B Shareholder."  [AB at 26.]  Rather, by operation of the Delaware General Corporation Law ("DGCL")[3] (the governing state statute) and under the Company's charter and bylaws (the foundational governing documents), the RPM Trust can hold 2.4 shares of Boar's Head common stock without being a Group B Shareholder or a party to the Shareholder's Agreement.

As a matter of hornbook Delaware corporate law, the DGCL, as well as a company's charter and bylaws, "specify what rights are appurtenant to the shares and available for the stockholders to exercise."  *New Enter. Assocs. 14, L.P. v. Rich*, 295 A.3d 520, 574 (Del. Ch. 2023).  By contrast, a shareholders' agreement is a

---

[3] While the Shareholder's Agreement is governed by New York law, Boar's Head is a Delaware corporation.  [Eric App. at 50, 79.]  A corporation's internal affairs, such as the rights appurtenant to shares, are governed by the laws of the state of incorporation.  *See Planned Consumer Mktg., Inc. v. Coats & Clark, Inc.*, 522 N.E.2d 30, 35 (N.Y. 1988).

*private contract* by which shareholders "get[] to choose whether to exercise" certain of their rights under the DGCL, charter, and bylaws by "agree[ing] contractually to constrain its exercise of those rights." *Id.* at 574.

Here, the Shareholder's Agreement is a private contract that was negotiated and executed among the Boar's Head Shareholders in 1991. Pursuant thereto, the parties agreed to constrain their exercise of certain shareholder rights, such as the right under Delaware law to freely dispose of their shares. *See* 8 Del. C. §§ 159, 202. Moreover, the "Group A" and "Group B" classifications are *contractual* designations applicable only to parties to that contract. None of that means that the RPM Trust could hold 2.4 shares *only as* a party to the Shareholder's Agreement.

Rather, if the 2011 Transfer did not comply with the terms of the Shareholder's Agreement and Eric is time-barred from challenging that transfer pursuant thereto, then the RPM Trust continues to hold 2.4 shares of Boar's Head common stock as governed exclusively by the DGCL and the Company's charter and bylaws.

The relationship between the DGCL and the company's governing documents, on the one hand, and a shareholders' agreement, on the other, does not change, even if all shares were at one time governed by a shareholders' agreement. The Delaware Chancery Court's decision in *Henry v. Phixios Holdings, Inc.*

11

illustrates this basic principle.  No. 12504–VCMR, 2017 WL 2928034 (Del. Ch. July 10, 2017).

There, like here, the company's shareholders' agreement contained transfer restrictions and other terms that purported to apply to *all* issued and outstanding shares of the company.  *Id.* at *10; *see also* Ex. A to Pl. Reply Br. (Shareholders' Agreement), 12504-VCF (Del. Ch. Sept. 14, 2016), Doc. 29.  In an action involving a shareholder plaintiff's demand to inspect a corporation's books and records pursuant to DGCL § 220, the company resisted the demand by arguing that the plaintiff ceased being a shareholder of the company (and, therefore, had no statutory inspection rights) because they violated the shareholders' agreement's transfer restrictions.  *Henry*, 2017 WL 2928034, at *1.

The Chancery Court held the plaintiff did not violate the shareholders' agreement because the plaintiff—who acquired the company stock after the shareholders' agreement was executed, and never had actual knowledge of the transfer restrictions or assented to be bound by them—was never bound by those provisions in the first place.  *Id.* at *2.  As a result, the court held the plaintiff "remains a stockholder" free to enjoy his statutory inspection rights under the

DGCL, but was not bound to the subject provisions of the shareholders' agreement. *Id.*

The same logic applies here. The RPM Trust, as an owner of 2.4 shares of Boar's Head common stock, may be a "shareholder" of Boar's Head without also being a "Group B Shareholder" under the Shareholder's Agreement. Under that circumstance, the RPM Trust would have the shareholder rights provided by the DGCL and the Company's charter and bylaws, but not the rights to freely receive shares under the Shareholder's Agreement as a "Group B Shareholder."

*    *    *

RSM's brief confirms that the District Court's failure to assess the validity of the 2011 Transfer under the Shareholder's Agreement was reversible error. Indeed, while RSM states summarily that "[t]he district court meticulously walked through the evidence demonstrating" that the RPM Trust purportedly received shares in 2013 and 2016 as a Group B Shareholder [AB at 42], he says *nothing* in response to the arguments in Eric's initial brief as to why the District Court's reliance on the 2011 Transfer Documents and isolated language from the Shareholder's Agreement was reversible error. [*See* IB at 39-43.] Accordingly, the District Court's decision should be reversed and the case should be remanded.

13

**II.    THE STATUTE OF LIMITATIONS IS NOT A DEFENSE TO ERIC'S DECLARATORY JUDGMENT CLAIM CHALLENGING THE 2011 TRANSFER AS VOID *AB INITIO* IN ANY EVENT.**

The District Court's holding that the 2011 Transfer is time-barred under CPLR § 213(2)'s six-year limitation period simply cannot be squared with New York's highest court's instruction in *Riverside* and *Faison* that the statute of limitations is not a defense in an action seeking a declaration that a document is void *ab initio*.[4]  Nothing in RSM's papers alters that conclusion.

Alternatively, to the extent there is any question as to whether *Riverside* and *Faison* control the resolution of Eric's claim, this Court should certify that question to the New York Court of Appeals.[5]

**A.    RSM Provides No Viable Basis for Disregarding *Riverside* and *Faison*, Controlling Authorities by New York's Highest Court.**

As set forth in Eric's initial brief, in *Riverside* and *Faison*—which concerned two dissimilar factual circumstances and documents—the New York Court of Appeals held that the statute of limitations is not a defense in an action where, as

---

[4] Contrary to RSM's contention, Eric never argued that the "shall be void" language in the Shareholder's Agreement amounts to a contractual waiver.

[5] For the first time on appeal, RSM asserts that, "under any formulation," Eric's declaratory judgment claim is time-barred because, under CPLR § 213(1), "the maximum statute of limitations for declaratory judgment claims is six years." [AB at 28-29.] RSM forfeited that argument by failing to raise it below.  *See Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir. 2004).  And, in any event, Eric's claim is not time-barred in light of the Court of Appeals' decisions in *Riverside* and *Faison*.

here, a party seeks a declaration that a document is void *ab initio*, because the statute of limitations "does not make an agreement that was void at its inception valid by the mere passage of time." *Riverside Syndicate, Inc. v. Munroe*, 882 N.E.2d 875, 878 (N.Y. 2008); *see also Faison v. Lewis*, 32 N.E.3d 400, 404 (N.Y. 2015) ("[A] document void at its inception has no effect and cannot be subject to a statute of limitations[.]").

RSM asks this Court to disregard those controlling authorities because they supposedly represent "a narrow exception to the statute of limitations for a transaction that is illegal, criminal, or against public policy." [AB at 32.] RSM is wrong: *Riverside* and *Faison* are not "narrow exception[s]" as is made clear by the language of those decisions.

In fact, the Court of Appeals in *Faison* considered—and expressly <u>*rejected*</u>— substantially the same argument that RSM advances here, *i.e.*, that *Riverside* "should be limited to its subject matter, namely instruments void at inception due to illegality." *Faison*, 32 N.E.3d at 405. The *Faison* Court was "unpersuaded" by that argument because "the language and analysis employed in *Riverside* make clear that the holding was based on a rule that is *generally applicable* to claims involving void documents, including" the forged deed that was at issue. *Id.* (emphasis added). Therefore, the court held, "[t]he fact that *Riverside* involved an illegal agreement *is*

15

*no basis to limit its analysis* as regards the statute of limitations." *Id.* (emphasis added).

Thus, RSM is incorrect that the holdings in *Riverside* and *Faison* were based on the subject matter of the documents or the reasons why they were void. *Riverside*, 882 N.E.2d at 878; *Faison*, 32 N.E.3d at 404. Rather, those holdings were based on the Court of Appeals' recognition of "the significance of [the] legal distinction" between "void and voidable documents" and the fact that "a document void at inception," unlike a voidable document, "has no effect." *Faison*, 32 N.E.3d at 405 (citing *Pacchiana v. Pacchiana*, 462 N.Y.S.2d 256, 258 (App. Div. 1983)).

RSM fails to cite any authority that supports his contention that *Riverside* and *Faison* do not apply if a document is void for reasons other than illegality, criminality, or public policy. [AB at 32-33 n.14.] Indeed, there is no indication in *Riverside*, *Faison*, or its progeny that the *reason* a document is void *ab initio*— whether by statute, public policy, lack of consideration, contract, or otherwise—has any effect on the Court of Appeals' fundamental holding that the statute of limitations "does not make an agreement that was void at its inception valid by the mere passage of time." *Riverside*, 882 N.E.2d at 878. Accordingly, RSM's attempt to limit the scope of *Riverside* and *Faison* is unavailing.

**B.    RSM's Authorities Do Not Undermine *Riverside* and *Faison*'s Application to Eric's Declaratory Judgment Counterclaim.**

RSM cites a handful of federal and New York trial and intermediate appellate court cases that are inapposite, mischaracterized, and/or support Eric's position. [*See* AB at 30-31.]  None provides any basis for setting aside *Riverside* and *Faison*.

In fact, *Kassab* only serves to underscore that *Riverside* **does** apply to Eric's claim.  In *Kassab*, where the plaintiff sought a declaration that an option agreement was void for lack of consideration, the trial court determined that plaintiff's reliance on *Riverside* was "misplaced" because, under New York law, an option agreement can only be voidable—not void—for lack of consideration.  *Kassab v. Kasab*, No. 14428/2013, 2014 WL 11498024, at *3 (N.Y. Sup. Ct. Mar. 12, 2014) (Trial Order). The court thus held that *Riverside* did not apply to plaintiff's claim because *Riverside* "expressly distinguish[ed] between contracts that are voidable . . . and contracts that are void at their inception" and held only that the statute of limitations does not apply to the latter, which was not at issue in that case. *Id.*  The Appellate Division affirmed. 29 N.Y.S.3d 39, 41-42 (App. Div. 2016).

Nor do *Busher* and *Cross Sound*[6]—two federal court decisions that are not binding on questions of New York law[7]—support the District Court's application of CPLR § 213(2) here.

For one, as expressly stated by the Second Circuit at the top of its opinion, *Busher* was a ruling by summary order, which "do[es] not have precedential effect." *See* Summ. Order at 1, *Busher*, 20-3587-cv (2d Cir. Nov. 2, 2021), Doc. 95-1; *see also* 2d Cir. Loc. R. 32.1.1(a) ("Rulings by summary order do not have precedential effect."); *Med. Ctr. BPB, Inc. v. Humana, Inc*., No. 15-cv-81150, 2015 WL 12815285, at *3 (S.D. Fla. Oct. 15, 2015) (noting that "unpublished, summary order has no precedential value").

Moreover, *Busher* and *Cross Sound* are distinguishable because they did not specifically address the question at issue in this appeal: Whether Eric's declaratory judgment counterclaim, which seeks a declaration that the 2011 Transfer Documents are void *ab initio*, is a claim "upon a contractual obligation or liability" within the purview of CPLR § 213(2). Indeed, CPLR § 213(2) was not even at issue in those cases.

---

[6] *Busher v. Barry*, 20-3587, 2021 WL 5071871 (2d Cir. Nov. 2, 2021) (Summary Order); *Cross Sound Cable Co. v. Long Island Lighting Co.*, No. 21-CV-2771, 2022 WL 247996 (E.D.N.Y. Jan. 27, 2022).

[7] *Mesa Air Grp., Inc. v. Delta Air Lines, Inc.*, 573 F.3d 1124, 1129 n.6 (11th Cir. 2009) (holding that federal courts are "bound to apply [New York] law as it has been announced by the New York Court of Appeals").

By contrast, the Court of Appeals in *Riverside* grappled with the same limitation provision as the one at issue here (CPLR § 213(2)) and held that CPLR § 213(2)'s six-year limitations period does *not* apply to an action seeking a declaration that an agreement is void *ab initio*. *Riverside*, 882 N.E.2d at 878. Thus, *Riverside* and *Faison*—not *Busher* or *Cross Sound*—are the controlling authorities here.

Nor do the other New York trial or intermediate appellate court cases that RSM relies on [AB at 30-31] move the needle, since all of them **pre-date** *Riverside* and *Faison*. As for *Corporate Universe, Inc. v. Emry Capital Group, Inc.*, a federal district court decision that is not binding on questions of New York law, the part of that decision that RSM cites did not rely on or even reference any New York statutes or authorities. No. 21-CV-06923, 2023 WL 5629230, at *3 (S.D.N.Y. Aug. 31, 2023).

Accordingly, RSM fails to present any reason why *Riverside* and *Faison* are not the binding, controlling authorities applicable to this case.

## C. In the Alternative, to the Extent There is Any Ambiguity Regarding the Application of *Riverside* and *Faison*, This Court Should Certify the Question to the New York Court of Appeals.

In the alternative, if this Court determines that there is any question as to whether *Riverside* and *Faison* control the resolution of Eric's declaratory judgment claim, Eric respectfully submits that the Court should certify the question to the New

19

York Court of Appeals pursuant to 22 N.Y.C.R.R. § 500.27 ("Rule 500.27") "to avoid making unnecessary *Erie* 'guesses' and to offer the state court the opportunity to interpret or change existing law." *Mosher v. Speedstar Div. of AMCA Int'l, Inc*., 52 F.3d 913, 916-17 (11th Cir. 1995) (footnote omitted).

Rule 500.27 allows this Court to certify questions of New York law to the New York Court of Appeals "[w]henever it appears to" this Court that "determinative questions of New York law are involved" in a case pending before it "for which no controlling precedent of the [New York] Court of Appeals exists." Rule 500.27(a).

This case satisfies the requirements for certification under Rule 500.27. The question of whether the six-year limitation period under CPLR § 213(2) applies to an action seeking a declaration that a transfer document is void *ab initio* is a question of law that is determinative of whether Eric's declaratory judgment counterclaim is time-barred under New York law. Further, if this Court does <u>not</u> conclude that *Riverside* and *Faison* control the resolution of this case, that would mean that "no controlling precedent of the Court of Appeals exists" on the question of whether the statute of limitations is a defense in an action seeking a declaration that a document is void *ab initio* in circumstances beyond those involving illegal rent agreements or forged deeds.

Indeed, while some New York courts have extended the application of *Riverside* and *Faison* to ordinary commercial contracts, other courts have expressed confusion as to the scope of *Riverside* and *Faison* and have noted the need for more definitive guidance on this issue by the New York Court of Appeals.  For example, in *Cross Sound*, the U.S. District Court for the Eastern District of New York acknowledged that "*Faison* and *Riverside Syndicate* contain some language favorable to" the "position that an action challenging a void agreement is never subject to a statute of limitations defense." *Cross Sound*, 2022 WL 247996, at *11. However, in light of the Second Circuit's views in *Busher* regarding *Faison*, and "*[i]n the absence of more definitive guidance from the New York Court of Appeals*," the district court in *Cross Sound* followed the Second Circuit's approach in *Busher* and applied a six-year statute of limitations.  *Id.* (emphasis added).

Accordingly, to the extent there is any question as to whether *Riverside* and *Faison* control the resolution of Eric's declaratory judgment claim, this Court should certify the question to the New York Court of Appeals.

## III.    RSM'S BRIEF CONFIRMS THAT THE DISTRICT COURT ERRED BY REJECTING ERIC'S EQUITABLE ESTOPPEL DEFENSE.

Finally, this Court should vacate the portion of the District Court's Order finding waiver of Eric's equitable estoppel defense and remand it for further proceedings.

### A.    RSM Fails to Defend the District Court's Finding of Waiver.

RSM fails to explain how the District Court's finding of waiver squares with this Court's longstanding jurisprudence that makes clear that the failure to timely raise an affirmative defense does not automatically result in a waiver of the defense. [*See* IB at 52-53.]  In fact, RSM simply ignores this Court's instructions that courts "must avoid hypertechnicality in pleading requirements" in determining whether a defendant waived an affirmative defense, *Hassan v. United States Postal Service*, 842 F.2d 260, 263 (11th Cir. 1988), and that omission of an affirmative defense from responsive pleadings "is simply noncompliance with a technicality and does not constitute a waiver" of the defense where there is no surprise or prejudice.  *Edwards v. Fulton County*, 509 F. App'x 882, 887 (11th Cir. 2013) (per curiam) (citation omitted); *see also* IB at 52-53.

Ignoring binding Circuit authority, RSM relies exclusively on two unpublished district court decisions to argue—for the first time on appeal—that he was prejudiced because Eric did not raise equitable estoppel until after the close of discovery.  [AB at 43.]  RSM's argument fails for several reasons.

<u>First</u>, RSM concedes that, when arguing to the District Court that Eric waived his equitable estoppel defense by not raising it in his answer, RSM never asserted that he was prejudiced by the delay.  [*See* IB at 54-55.]  Accordingly, RSM forfeited any argument that he was prejudiced, and this Court should not consider those

arguments on appeal. *See Sw. Airlines Co.*, 385 F.3d at 1331 (declining to consider arguments raised for the first time on appeal).

*Second*, in any event, this Court's longstanding precedent and RSM's own authorities foreclose RSM's argument that he was prejudiced *solely* because Eric did not raise the defense until after close of discovery. [AB at 26, 43.] To the contrary, this Court has made clear that a defendant's technical failure to comply with Rule 8(c) "does not cause the plaintiff any prejudice" if the plaintiff "receives notice of an affirmative defense *by some means other* than pleadings." *Grant v. Preferred Rsch., Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (emphasis added) (citation omitted).

Indeed, in cases where, as here, defendants raised an affirmative defense for the first time on summary judgment <u>after</u> the close of discovery, this Court has routinely held that plaintiffs were <u>not</u> prejudiced by defendants' delay in raising the defense because plaintiffs were on notice of the defense by other means such as discovery and pre-trial submissions. *See, e.g.*, *Edwards*, 509 F. App'x. at 887-88 (no waiver of defense raised in motion for summary judgment after close of discovery); *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1351-52 (11th Cir. 2007) (same); *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1222 (11th Cir. 2012) (same).

The two unreported district court decisions that RSM relies on—*Kleiman* and *National Health*—only serve to demonstrate the District Court's error in finding

waiver despite RSM's failure to assert prejudice.  Unlike RSM, the plaintiffs in those cases asserted in their summary judgment briefs that they were prejudiced by defendants' failure to comply with Rule 8(c), and the court found prejudice because the defendants were clearly trying to surprise plaintiffs with a new defense at the eleventh hour. *See Kleiman v. Wright*, 18-cv-80176, 2020 WL 5632654, at *32 (S.D. Fla. Sept. 18, 2020) (finding prejudice because defendants "sat on" defense throughout two years of extensive discovery and raised it at the "eleventh hour" even though the defense "could have easily been asserted [ ] two years ago") (alteration in original); *see also Nat'l Health Fin. DM, LLC v. Sea Spine Orthopedic Inst., LLC*, 21-cv-60405, 2022 WL 2065045, at *6 (S.D. Fla. June 8, 2022) (finding prejudice because defendants tried to "sandbag[ ]" plaintiffs with unpled defense that was "precisely the opposite" of defense alleged in twice-amended answer).  No such claim of surprise can be made here.

*Third*, RSM asserts that "prejudice to RSM from [Eric's] belated assertion of equitable estoppel is supported by the record," but he does not cite once to the record. [AB at 45.]  That is because the record shows just the opposite.  [*See* IB at 53-54.]

As detailed in Eric's initial brief, the record shows that RSM had ample notice of the basis for Eric's equitable estoppel defense—the timing of when Eric learned of the 2011 Transfer, and RSM's efforts to conceal it from Eric—which the parties explored during discovery.  [*See* IB at 53-54.]  Moreover, given that Eric raised the

24

defense on summary judgment—months before trial was set to begin—RSM was free to move to reopen discovery during or after summary judgment if he felt that additional discovery was necessary on the issue, and RSM would have had ample opportunity to prepare to address the defense at trial. Thus, there is no basis for RSM to complain that "there was no opportunity to pursue fulsome discovery." [AB at 46.]

_Finally_, RSM's attempt to distinguish this Court's holding in _Proctor_ on the basis that the affirmative defense at issue there was not specifically enumerated in Rule 8(c), unlike equitable estoppel, is unavailing. RSM does not dispute that, in _Proctor_, the Court held that the district court's finding of waiver was an abuse of discretion because, like here, the court failed to conduct any analysis as to whether the plaintiff had notice and was prejudiced. _Proctor_, 494 F.3d at 1351-52.[8]

For the foregoing reasons and the reasons set forth in Eric's initial brief, this Court should vacate the portion of the District Court's order finding that Eric waived his argument that RSM is equitably estopped from asserting a statute of limitations defense.

---

[8] RSM is wrong that _Sweet_ and _Edwards_ are "inapposite." [AB at 46 n.19.] In _Sweet v. Secretary, Department of Corrections_, this Court relied heavily on the fact that the plaintiff there, like RSM, did "not allege that he was prejudiced in any way by the delay." 467 F.3d 1311, 1321 n.4 (11th Cir. 2006). Further, like in _Edwards_, Eric's discovery requests suggested a defense based on RSM and the Company withholding information from Eric concerning the Three Transfers. [See IB at 53-54.]

**B.    RSM Does Not Defend the District Court's Erroneous Factual Finding Concerning Eric's Knowledge of the 2011 Transfer in 2015.**

As set forth in Eric's initial brief, the District Court erred in finding in the alternative that, even if Eric could raise his equitable estoppel argument, "[t]here is no genuine issue of material fact as to Eric Bischoff's knowledge of *the 2011 Transfer* in 2015." [IB at 57 (citing Doc. 82 at 28) (emphasis added).] That error is fundamental: There is no evidence in the record (and the District Court did not cite any) that establishes Eric's knowledge of the 2011 Transfer in 2015.

Notably, RSM does not dispute that the District Court's factual finding was erroneous, and he does not point to anything in the record supporting that finding. Accordingly, RSM's brief confirms that the District Court's finding of Eric's knowledge of the 2011 Transfer in 2015 was clearly erroneous. *See, e.g.*, *Francis v. Heckler*, 749 F.2d 1562, 1567 (11th Cir. 1985) (district court's factual finding was clearly erroneous because "there is no evidence to support it").

Notwithstanding that, RSM relies on a hodge podge of disputed facts[9] to argue that Eric's equitable estoppel defense fails as a matter of law.  [AB at 46-50.]  But the District Court did not consider any of those arguments or facts in reaching its decision.  Indeed, RSM's resort to disputed facts illustrates precisely why reversal is warranted:  The application of equitable estoppel here involves questions of fact that are inappropriate for resolution on summary judgment.  *See Garrett v. Music Publ'g Co. of Am., LLC*, 740 F. Supp. 2d 457, 464 (S.D.N.Y. 2010) (denying summary judgment).

Accordingly, even if this Court were to affirm the District Court's holding that Eric's counterclaims challenging the 2011 Transfer are time-barred, the Court should vacate that portion of the District Court's Order finding waiver of Eric's equitable estoppel defense and remand it for further proceedings.

---

[9] RSM's factual assertions are irrelevant and/or unsupported by the record.  RSM contends that, in 2017, Eric was "given a detailed written listing of all owners and their shareholdings" [AB at 49], but he does not dispute that this document said nothing about the fact that the first Transfer occurred in 2011.  [IB at 57.]  RSM's reliance on a lone signature block in the 2013 Rescission Agreement as evidence of Eric's supposed lack of diligence [AB at 48-49] is also unavailing, as it was added just prior to signing and there is no evidence that Eric, who signed a separate signature page, ever saw it.  RSM also contends that RPM's ownership status was announced to distributors at a national sales meeting [AB at 12], but nothing he cites to evidences that.  In any event, all those assertions are disputed.  [Eric App. at 382-86.]

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should reverse the District Court's grant of partial summary judgment in RSM's favor, reinstate Eric's Counterclaims challenging the Three Transfers, and remand the case to the District Court for further proceedings.  In the alternative, in the event this Court certifies the question set forth in Section II(C) to the New York Court of Appeals, this Court should stay resolution of this appeal pending its receipt of the New York Court of Appeals' answer to the certified question.

Dated:  April 19, 2024                    Respectfully submitted,

                                          /s/ Michael E. Swartz
                                          Michael E. Swartz

                                          SCHULTE ROTH & ZABEL LLP
                                          Michael E. Swartz
                                          Taleah E. Jennings
                                          Randall T. Adams
                                          Minji Reem
                                          Mark L. Garibyan
                                          919 Third Avenue
                                          New York, New York 10022
                                          Telephone: 212.756.2000

                                          SHUMAKER LOOP &
                                          KENDRICK LLP
                                          Duane A. Daiker
                                          Jaime Austrich
                                          Florida Bar. No. 84565
                                          101 East Kennedy Boulevard
                                          Tampa, Florida 33602
                                          Telephone: 813.229.7600

                                          *Counsel for Appellant Eric Bischoff*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,498 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14.

Dated:  April 19, 2024          /s/ Michael E. Swartz
                                Michael E. Swartz

                                SCHULTE ROTH & ZABEL LLP
                                919 Third Avenue
                                New York, New York 10022
                                Telephone: 212.756.2000

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 19, 2024, I authorized the electronic filing of the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the email addresses of all counsel of record.

Dated:  April 19, 2024

/s/ Michael E. Swartz
Michael E. Swartz

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, New York 10022
Telephone: 212.756.2000